**STATE of Missouri, Respondent,**

v.

**Donald JONES, Appellant.**

No. 77168.

Supreme Court of Missouri,
En Banc.

Nov. 3, 1998.

Rehearing Denied Dec. 1, 1998.

---

William J. Swift, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay), Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

WOLFF, Judge.

Donald Jones was convicted of murder in the first degree and armed criminal action. He was sentenced to death on the murder charge and to life in prison on the armed criminal action charge. Jones filed a motion for post-conviction relief pursuant to Rule 29.15, which was overruled. In a consolidated appeal to this Court, Jones raises twenty-one points of error. We affirm.

## I. Facts [1]

On March 6, 1993, appellant, Donald Jones, went to his grandmother's house around midnight to get some money to buy crack cocaine. When Jones arrived, the grandmother, Dorothy Knuckles, let him in, and they went to her bedroom on the second floor. While in the bedroom Jones asked the grandmother for money. She refused and started lecturing Jones about his drinking and use of cocaine.

Jones went downstairs to the kitchen, picked up a butcher block that contained knives, hid it behind him and went upstairs. His grandmother started lecturing him again, and Jones hit her several times with the butcher block while she screamed. Jones apparently became afraid that the neighbors might hear her screaming, picked up a knife that had fallen out of the butcher block and stabbed her until she stopped screaming and fell back onto her bed.

Jones took his grandmother's car keys, money, and VCR, and he drove off in her car. Jones purchased some drugs, sold the VCR and rented out the car to get money to buy drugs.

The grandmother's body was discovered on March 8, 1993, by her son. On March 9, 1993, the police went to Jones' place of work to question him. Jones was not under arrest

at this time, and he agreed to follow the police to the homicide office. After some conversations at the office, Jones became a suspect and was informed of his *Miranda* rights. Jones then said, "It's the monster inside of me." He explained that the monster inside him was the crack cocaine that had caused him to kill his grandmother. He gave an audiotape statement of the above facts on how he killed his grandmother.

Jones was charged by indictment with murder in the first degree, robbery in the first degree, and two counts of armed criminal action. The case went to trial on two charges: murder in the first degree and one count of armed criminal action. The jury returned guilty verdicts on both counts and recommended death for murder and life in prison for armed criminal action, which the court imposed. Jones filed a motion to vacate, set aside, or correct the sentence or judgment of the trial court pursuant to Rule 29.15. The motion was overruled.

## II. Prejudicial Penalty Argument

Jones contends that the trial court erred when it overruled defense counsel's penalty phase objection to the prosecutor's argument: that if a stranger had killed Dorothy Knuckles, then her family would have wanted the state to seek the death penalty. Jones contends the argument constituted speculation, asserted facts not in evidence, was improper, and was contrary to the family's beliefs and wishes. When the trial court allows argument over defense counsel's objection, rulings are reversible only for abuse of discretion where argument was plainly unwarranted. *State v. Hall*, 955 S.W.2d 198, 208 (Mo. banc 1997). Parties have a considerable latitude in arguing during the penalty phase of a first-degree murder case. *Id.* Moreover, a prosecutor may rebut defense counsel's argument if the defense counsel opens the door to an otherwise questionable line of argument. *See State v. Kenley*, 952 S.W.2d 250, 272 (Mo. banc 1997).

---

1. This Court reviews the evidence in the light most favorable to the verdict. *State v. Shurn*, 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. de-* *nied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

In *State v. Kenley, supra,* the prosecutor rebutted defense counsel's argument that the defendant apologized to a prison librarian for taking her hostage by arguing the defendant apologized because he knew the hostage incident would surface at trial and made a similar comment about defendant's improved behavior while incarcerated. *Id.* The Court stated that the comments were not improper. *Id.* In fact, "[d]efense counsel opened the door to this argument by inferring that Kenley [defendant] apologized or decreased the number of conduct violations because he had turned over a new leaf." *Id.* The Court further stated that: "[i]t was reasonable for the prosecutor to counter this argument with the fact that Kenley had other potential motives for his behavior." *Id.*

 In the case before us, the defense counsel made the following statement:

His (Jones) family doesn't want him to die. His family wants him to live. They care about him and love him. Do you think that's what Dorothy Knuckles would want based on what you've heard about her. Do you think she would want you to take vengeance and kill her grandson.

The prosecutor in rebuttal made the following argument:

Now let me say something about the Knuckles' family. If there were more families like the Knuckles' family in this country we wouldn't have the problems we have. But they are not objective. They cannot be objective and nobody expects them to be. If the killer of Dorothy Knuckles was a stranger they'd be sitting on this side of the courtroom.

DEFENSE COUNSEL: Objection, Your Honor. That's total speculation. Improper.

THE COURT: The objection's overruled.

PROSECUTOR:—supporting us in asking for the death penalty. Families supporting us maybe even when it's – or asking us to do it even when it's not justified. Families cannot be objective. Nobody expects them to be. You know about the Knuckles' family, and the question becomes of that family why is he sitting here.

Coming from that kind of family and that kind of background why is he sitting here. He could have been anything he wanted. That family would have done anything for him. Why is he sitting here. He's sitting here because one time he made a choice. He made a choice to turn his back on that family and abuse drugs....

The prosecutor's statement was not improper within the context in which it was made. It was in response to the defense counsel's suggestion that the family opposes the death penalty for Jones. The prosecutor offered a common sense reply that perhaps the family is biased because Jones is a family member. In this situation the defendant may not provoke a reply and then assert error. *State v. Roll,* 942 S.W.2d 370, 378 (Mo. banc 1997). Furthermore, *State v. Storey,* 901 S.W.2d 886 (Mo. banc 1995), is inapplicable in this instance because the contexts were different, the opinions were more personalized and not based on evidence presented, and the comment was not in response to the defense counsel's argument. The trial court did not abuse its discretion in overruling the defense counsel's objection.

### III. Whether the Trial Judge Could Fairly Serve

Jones argues that the trial judge erred in denying the motion to disqualify himself because of his longstanding animosity toward one of the defense attorneys. Jones also contends that the trial judge erred when he refused to allow the motion to disqualify him to be heard by another judge. The defense attorney entered her appearance as co-counsel in the case after the time had passed for the defendant to get an automatic change of judge under Rule 32.07. Thus, the two issues are whether the trial judge should have disqualified himself for cause and whether, in any event, that determination should have been made by a different judge.

 Questions concerning a judge's qualification to hear a case usually are not constitutional questions; rather, they are questions answered by common law, statute or the code of judicial conduct. *State v. Nicklasson,* 967 S.W.2d 596, 605 (Mo. banc 1998). Canon 3D(1) of Rule 2, the Code of

Judicial Conduct, requires a judge to recuse himself in a proceeding where the judge's impartiality might reasonably be questioned. In construing this provision, the test applied is "whether a reasonable person would have a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court." *State v. Smulls*, 935 S.W.2d 9, 17 (Mo. banc 1996). It is presumed that judges will not undertake to preside in a proceeding where they cannot be impartial. *State ex rel. Ferguson v. Corrigan*, 959 S.W.2d 113, 115 (Mo. banc 1997). The judge himself or herself is in the best position to decide whether recusal is necessary. *Id.* To qualify, the bias must come from an extrajudicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case. *Nicklasson, supra.*

In *Nicklasson*, the defendant claimed bias in the trial court's decisions:

> not to allow attorney participation in death-qualification voir dire; refusing to excuse for cause a venireperson who did not ultimately serve on the jury; to refer to some of the defense expert testimony as "junk science" (outside the presence of the jury); to express criticism of a member of the defense team; to comment that one defense witness's testimony was "refreshing" and to state during the questioning of another defense witness "let's get on to something that's going to assist this jury in making a decision" after overruling an objection by the state; and to "ridicule" penalty-phase witnesses.

*Id.*

This Court concluded that none of the assertions rose to the level of bias or prejudice toward either party arising from an extrajudicial source and that none of the assertions supported a contention that the trial court's conduct affected the jury in its fact determinations or sentence recommendation. *Id.*

 Similarly, in the instant case, the record does not support a claim that the trial judge's attitude towards defense co-counsel affected the jury in its fact determinations or sentence recommendation. There is only one place in the trial record that appellant can cite to support his claim that the trial judge's bias affected the trial:

> PROSECUTOR: So when you're deliberating as a jury on guilt or punishment phase one must interact with his fellow jurors, and you may go down there at the first time you talk about it and some of you may be for death -
>
> DEFENSE CO-COUNSEL: Judge, I'm going to object to this at this time. I think that Mr. Ravetta has already had the opportunity to discuss the law with people if there are specific questions that he has for individuals, but I think, first of all, he's improperly defining some things here and going over some things –
>
> THE COURT: Let's go up here. Let's not make speeches in front of the jury. That isn't an objection, it's a speech.
>
> (Counsel approached the bench and the following proceedings were had outside the hearing of the voir dire panel:)
>
> THE COURT: I don't want any more objections made in the form of speeches, do you understand that. You are to come up here with a legal objection. You made a long speech in front of the jury with a deliberate attempt apparently to influence them. Make objections like that up here. Is that clear? Do you understand me?
>
> DEFENSE CO-COUNSEL: Yes, Judge. I would also like to make a brief record at this point. It seems as if based on the Court's tone and demeanor that it is angry with what I have just done.
>
> THE COURT: I certainly am, because you have no business making a long, rambling speech and statement that was not in fact a legal objection in the presence of the jury. That kind of thing should be done at the bench.
>
> DEFENSE CO-COUNSEL: I would also indicate for the record, first of all I was just trying to phrase the objection as well as I could under the circumstances; that I was not trying to influence the jury, that I was just trying to make an objection. And in addition to that I believe Mr. Ravetta made some speaking objections and was not treated in the same manner as

I am right now for having made some speaking objections.

THE COURT: I don't think any of them were that long, that concise, and that detailed. That was in fact a speech. Now what is the specific objection to what?

DEFENSE CO–COUNSEL: Mr. Ravetta has already had the opportunity to make his – to do his voir dire. He's now having this detailed – giving a detailed speech or lecture as to what deliberation means and even implying that deliberation means that you will change your mind as I think one juror seems to infer from what Mr. Ravetta says. I don't think it's proper and I think that he's already had his opportunity. If there are specific jurors that he feels the need to rehabilitate, but it's gone way beyond that to the point where he is really getting to do a second entire voir dire.

From the above record, it is not clear that the judge's anger was shown toward defense co-counsel in his remarks in front of the jury, or whether the anger was shown only at the bench out of the jury's hearing. Furthermore, Jones does not allege facts to show that the judge was biased against him personally or against the merits of his case. It is relatively easy for a party in litigation to claim that he cannot get a fair trial because the judge dislikes his lawyer. We trust trial court judges in the first instance to discover whether such contentions are legitimate and to disqualify themselves in appropriate circumstances. Where as here the judge does not disqualify himself, we have only the record to review to determine whether this alleged animosity has in fact infected the trial with a bias whose source is extrajudicial. Upon this review, we are unable to find such bias manifested to the jury that would cause us to grant a new trial. The above-quoted portion of the trial transcript is the only portion of the record that Jones can cite to show judicial partiality, and plainly, no bias appears.

 Jones further contends that the trial judge erred in hearing the motion for his own disqualification. If sufficient facts to require recusal are not known to the judge but are contained in an affidavit in support of a motion to disqualify the judge, another judge must be assigned the case, at least for the purpose of deciding the motion to disqualify. *State ex rel. Ferguson v. Corrigan,* 959 S.W.2d 113 (Mo. banc 1997). By the same standard, if the motion to disqualify is substantially insufficient, the trial judge is not required to have another judge hear the recusal motion. *State v. Taylor,* 929 S.W.2d 209, 220 (Mo. banc 1996). Jones' contention is rejected because the facts that he pleaded were not sufficiently in dispute to require that another judge hear the motion to disqualify.

## IV. Family Opposition to the Death Penalty

Jones asserts that the trial court erred when it imposed the death sentence contrary to the victim's family wishes because that action denied them of the right to be meaningfully heard at sentencing and was contrary to the policy of treating victims with fairness, compassion, dignity, respect and sensitivity, as guaranteed by article I, section 32 of the Missouri Constitution. Dorothy Knuckles' family urged that a death sentence not be imposed. Jones argues that this request was based on feelings that the family could not begin the healing process if Jones were sentenced to death, and that no retributive interest was served since the family did not want a death sentence.

 Article I, section 32(2) of the Missouri Constitution, which governs crime victims rights, provides: "Upon request of the victim, the right to be informed of and heard at guilty pleas, bail hearings, sentencings, probation revocation hearings, and parole hearings, unless in the determination of the court the interests of justice requires otherwise...." Nothing in the above provision suggests that the trial court is required to follow the wishes of the victim's family members. The court heard the wishes of the family but was not bound by them.

## V. Post-conviction Hearing Denial

Jones alleges that the motion court erred by denying him a hearing on most of his Rule 29.15 claims. Jones asserts that he pleaded clearly and succinctly factual allegations as to

those claims that if proven would entitle him to relief and they were not refuted by the record. Further, he alleges that his pleadings contained claims of ineffective assistance of counsel, including counsel's failure: to take steps necessary to allow a second taped statement he made to be admitted in order to show his remorse; to present cumulative mitigating evidence; to represent him adequately during voir dire; to present evidence and adequately assert that jurors do not understand the MAI instructions; to question adequately defense penalty phase witnesses; and to take sufficient efforts to disqualify the trial judge and to make objections to his hostile behavior. Jones also contends that defense co-counsel should have withdrawn from the case based on her history of conflict with the trial judge. Finally, Jones alleges that the decision to seek death against him was based on arbitrary and capricious factors.

Rule 29.15(h) does not require an evidentiary hearing if the motion court determines that the files and records of the case conclusively show that the movant is not entitled to relief, but the court is required to issue findings of fact and conclusions of law. Appellate review of the trial court's findings of fact is limited to a determination of whether the findings are clearly erroneous. Rule 29.15(k). In order to obtain an evidentiary hearing, in claims related to ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced. *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997). Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996). Jones' motion was properly overruled without an evidentiary hearing because his allegations do not satisfy the above requirements.

A. Failure to Ensure that Taped Statement was Audible

Jones alleges that his counsel did not ensure that a taped statement he made

was audible and understandable because it could have been played for the jury to show his deep remorse and sadness. Counsel sought to introduce the tape into evidence, the prosecutor objected on grounds that it was inaudible and hearsay, and the court sustained the objection. The trial court did not err because Jones fails to prove how he was prejudiced in that his mother and Officer Douglas testified before the jury as to Jones' remorse and sadness. The tape will only be cumulative evidence of his remorse and sadness.

B. Failure to Present Psychological and Mitigating Evidence

Jones contends that counsel failed to develop and present evidence that he had suffered from a mental disease or defect affecting his responsibility and that his mental condition would have lessened the degree of the offense, mitigated punishment, or both. In order to support the above contention, Jones resorted to offers of proof and an affidavit not submitted to the motion court. The motion court did not err for overruling the motion because Jones did not prove that the counsel's failure to present extensive cumulative evidence about his mental status was prejudicial. *See, State v. Taylor,* 929 S.W.2d 209, 225 (Mo. banc 1996).

C. Failure to Ensure an Adequate Voir Dire

Jones alleges that his counsel failed to ensure that an adequate voir dire was conducted, to limit the prosecutor's and court's improper voir dire, and to ensure qualified venirepersons were retained and the unqualified ones were removed. The motion court found that Jones' allegations lacked factual specificity, that he did not prove prejudice and that he could not prove that his attorney's actions during voir dire were incompetent and not matters of trial strategy. *See Kinder, supra* at 338. The motion court findings and conclusions are not clearly erroneous.

D. Failure to Adequately Challenge MAI Instructions

■ Jones contends that his counsel was ineffective for failing to challenge the MAI instructions through presenting evidence that jurors do not understand the instructions. In support of this claim, Jones asserts that Dr. Richard Weiner, a social scientist, could have testified about a study of MAI instructions that purports to demonstrate that jurors in fact do not understand the instructions. This research does not necessarily support a conclusion that the jurors in this case were unable to understand the MAI instructions. This Court has decided that the MAI instructions are constitutional and that counsel's failure to object to possible jury misunderstanding does not support claims of ineffective assistance of counsel. The constitutionality of the MAI instructions defeats the claim that counsel's performance was deficient and that he was prejudiced. *Kinder, supra* at 338.

E. Questioning of Defense Counsel

■ Jones alleges that counsel was ineffective for failing to question defense witnesses, which was especially prejudicial in light of the prosecutor's argument that Knuckles' family was only testifying on behalf of Jones because he is a family member. These statements lack factual specificity and do not establish how Jones was prejudiced by counsel's failure to question the Knuckles' family extensively.

F. Trial Judge Disqualification

Jones alleges that counsel was ineffective in their efforts to disqualify the trial judge and that defense co-counsel should have withdrawn from representation due to her alleged conflict with the trial judge. This issue has already been addressed. The record, moreover, reflects that both defense attorneys functioned quite capably.

G. Arbitrariness of Death Sentence

■ Jones alleges that the decision to seek the death penalty was based on arbitrary and capricious considerations of race, affluence and gender. The motion court found that this was a matter for direct appeal. Post-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review. *See State v. Redman*, 916 S.W.2d 787, 793 (Mo. banc 1996). Furthermore, this Court has consistently upheld Missouri's death penalty scheme as being constitutional. *State v. Carter*, 955 S.W.2d 548, 562 (Mo. banc 1997).

## VI. Instructional Error

Jones argues that the trial court erred by using Instruction No. 12, which was modeled on MAI–Cr3d 308.03 and premised on section 552.010, RSMo 1994. Jones claims error because the instruction directed the jurors that they were only permitted, but not required, to consider his drug dependence and could only consider that dependence if psychosis had existed. Instruction No. 12 provides:

> You may consider evidence that the defendant had or did not have a mental disease or defect in determining whether the defendant had the state of mind required to be guilty of murder in the first degree.
>
> The term "mental disease or defect" means any mental abnormality regardless of its medical label, origin, or source. However, it does not include alcoholism without psychosis or drug abuse without psychosis.
>
> If, after considering all the evidence, including evidence that the defendant did or did not have a mental disease or defect, you have a reasonable doubt as to whether the defendant coolly reflected upon the matter of causing the death of Dorothy Knuckles, you must find the defendant not guilty of murder in the first degree as submitted in Instruction No. 7.

Jones argues that this had the effect of relieving the state from proving the mental state required for first degree murder and deprived him of a meaningful opportunity to present a complete defense by foreclosing the jury from considering his drug dependence.

■ Instruction 12 is proper. The permissive language allows the jury the option to consider evidence of mental disease or defect. There is no reasonable likelihood that the jury understands the instruction to relieve the state of its burden to prove each element beyond a reasonable doubt. *See State v. Erwin*, 848 S.W.2d 476, 481 (Mo.

banc 1993). Furthermore, in Missouri "alcoholism without psychosis or drug abuse without psychosis" does not constitute mental disease or defect. Section 552.010, RSMo 1994. *See also State v. Roll*, 942 S.W.2d 370, 376 (Mo. banc 1997) *cert. denied* — U.S. ——, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997).

## VII. Cross-examination of Dr. Armour

■ Jones argues that the trial court erred in limiting defense counsel's cross-examination of Dr. Armour regarding the difference between drug abuse and drug dependence. The judge sustained an objection to this line of questioning. Jones contends that the evidence would have proved that his drug dependence was a more serious mental impairment than merely drug abuse.

■ Trial courts have considerable latitude in limiting cross-examination because of concerns about prejudice, confusion of issues, and marginally relevant interrogation. *State v. Taylor*, 944 S.W.2d 925, 935 (Mo. banc 1997). The trial court did not err when it disallowed the question because the law does not support such a distinction between drug dependence and drug abuse.

## VIII. Limiting Instruction on Testimony of Lester and Linda Knuckles

■ Jones argues that the trial court erred by instructing the jury that it could only consider Lester and Linda Knuckles' testimony as to the voluntariness of Jones' statement and not for the purpose of whether he acted with deliberation. Lester and Linda testified they had listened to an audiotape of the police interrogation of Jones and that his voice did not sound normal. According to Jones the evidence was relevant to show whether he had acted with deliberation and contradicted Officer Douglas' testimony that Jones appeared to be "normal" when he was taken into custody.

■ In making its determination, the trial court found that the confession was not made near the time of the killing and that the testimony of defense expert, Dr. Parwatikar, did not indicate that he relied on the appellant's voice to make his finding regarding Jones' ability to deliberate. The killing occurred on the evening of March 6, 1993, and the confession was on March 9, 1993. The court instructed the jury before Lester and Linda's testimony. If evidence is admissible for one purpose but improper for other purposes, it should be received, subject to limiting instruction, if requested. *Dyer v. Globe–Democrat Pub. Co.*, 378 S.W.2d 570 (Mo.1964).

## IX. Limiting Inquiry of Substance Abuse During Voir Dire

Jones argues that the trial court erred by prohibiting defense counsel from asking the venire about their feelings regarding life imprisonment without parole and whether they could consider that punishment where the defendant had committed the offense after having ingested drugs or alcohol. Defense counsel wished to determine whether the venire could consider the full range of punishment under the facts presented and to acquire information necessary for making peremptory strikes and challenges for cause.

■ Questioning during voir dire is within the discretion of the trial judge, and only a manifest abuse of discretion and a probability of prejudice to the defendant will justify reversal. *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc 1997). The record indicates that although the trial court sustained the prosecutor's objection to some of defense counsel's questions regarding the venire's views on life imprisonment without parole, the court did allow the defense counsel to explain and question the venire on the full range of punishment. In fact, the venire stated that they understood the full range of punishment, that the state had the burden of proof, and they would consider mitigating evidence submitted. The trial court did not abuse its discretion.

## X. Limiting Questions of Witness on Mitigation and Failure to Submit Non–MAI Mitigating Instruction

■ Jones argues that the trial court erred because it sustained the state's objection to his counsel's attempt to elicit from St. Louis City jail social worker, David Kovac, that it was highly unusual for a jail inmate

not have obtained any conduct violations, as he had done, over an extended period of time. He also contends that the court failed to submit Instruction G, which listed non-statutory mitigating circumstances.

With regard to David Kovac, the following occurred:

Q. (defense co-counsel) Mr. Kovac, are you familiar with Donald Jones?

A. Yes, I am.

Q. How are you familiar with him?

A. Oh, he's been there for quite awhile, since March of '93. In my opinion he's a model resident. Never once doesn't have any writeups, he works in the laundry, does a very good job, he attends all the programs. He's a good resident.

Q. Okay. You said he hasn't had a single write-up?

A. That's correct.

Q. How common is that?

PROSECUTOR: Once again, I'm going to object, Your Honor, as being irrelevant.

THE COURT: The objection is sustained.

Jones made no offer of proof to show what the witness would have testified. In addition, Jones was not prejudiced by the trial court's ruling because he was allowed to develop evidence to demonstrate that he was a person of good character. *See State v. Richardson*, 923 S.W.2d 301, 320 (Mo. banc 1996).

With regard to the non-MAI mitigating instructions, this Court has stated that:

> Where an applicable MAI–CR instruction exists, the court is required under Rule 28.02 to submit that Instruction. The applicable MAI–CR instructions sufficiently address the jury's consideration of mitigating circumstances, and the trial court properly submitted the MAI instructions to the exclusion of defendant's non-MAI instructions regarding mitigators.

*State v. Roberts,* 948 S.W.2d 577, 603 (Mo. banc 1997).

## XI. Juror Contact

■ Jones argues that the motion court erred by entering an order that allowed Rule 29.15 counsel to speak with jurors about only a few select issues. As a result, counsel claims to be precluded from investigating, pleading, and proving claims of ineffective assistance of counsel and juror misconduct. The motion court order stated:

> For good cause shown, counsel for Movant Donald E. Jones, granted access to jurors in Cause Number 931–0666, their addresses, and their telephone numbers, pursuant to Rule 53.3, Rules of the Twenty-second Judicial Circuit Court. Counsel ordered not to disclose the juror addresses or telephone numbers to other persons. Inquiry of the jurors is limited to questions regarding jurors' use of telephone; jurors' familiarity with Donald Jones, his family members or friends; and or whether any pressure or influence was placed on the jurors.

The local Rule 53.3 of the Twenty-second Judicial Circuit provides:

> No attorney or client, their agents or representatives, shall contact any member of a jury which has heard evidence in any cause in this circuit; provided however, the court in its discretion may grant permission to attorneys or clients to discuss a case with the jurors immediately after the return of a verdict; provided further, the court may also allow contact with the jurors if necessary for purposes of a timely after-trial motion filed under Missouri Supreme Court Rules.

The motion court confined the subjects generally as to matters that are proper subjects of inquiry to jurors. The court did not abuse its discretionary power to grant permission for contact with the jurors after trial.

## XII. Prosecution's Discretion to Seek the Death Penalty

■ Jones argues that the trial court erred by denying his motion to quash the indictment based on the unconstitutionality of the death penalty and the prosecutor's discretion to seek the death penalty. This Court has consistently upheld Missouri's death penalty scheme. *See State v. Carter,* 955 S.W.2d 548, 562 (Mo. banc 1997).

## XIII. Sympathy to Defendant as Irrelevant to the Imposition of Sentence

 Jones argues that the trial court erred by overruling defense counsel's objection to the state telling the venire that the jury could not consider sympathy for him as a reason to impose a life sentence. Admonition to the jury not to consider sympathy in its punishment determination is not improper. This does not diminish defendant's prerogative to seek mercy from the jury based upon the circumstances of the case. *State v. Clemmons,* 753 S.W.2d 901, 910 (Mo. banc 1988), *cert. denied* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).

## XIV. Removal of Death Scrupled Venirepersons

 Jones argues that the trial court erred by sustaining the state's challenges for cause to venirepersons Edwards, Gray, Luedde, and Stagner because they indicated that they could consider the death penalty and would follow the law, as submitted in the jury instructions. Venirepersons may be excluded only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath. *State v. Roberts,* 948 S.W.2d 577, 597 (Mo. banc 1997). Venirepersons may not be excluded simply because of general objections to the death penalty or conscientious or religious scruples against it. *Id.* The trial court has broad discretion in determining qualifications of prospective jurors because it is in the best position to evaluate venirepersons' responses. *Id.* This Court will not disturb the trial court's ruling unless it is clearly against the evidence and constitutes a clear abuse of discretion. *Id.*

 Venireperson Edwards stated that she is against the death penalty on the basis of religion and that she would automatically vote against it regardless of the evidence in the case and instruction from the judge to consider both life and death punishments. However, later during appellant's voir dire, Edwards indicated that she could listen to evidence of aggravating circumstances, could discuss with other jurors whether those circumstances existed, could weigh the aggravating circumstances against the mitigating circumstances, and could discuss with the fellow jurors whether the aggravating circumstances warranted death. The record supports the trial court's decision to strike her for cause.

 Venireperson Gray stated categorically during prosecutor's voir dire that under no circumstance would he consider the death penalty. During defense counsel's voir dire he agreed that he would follow instructions from the court to determine whether the case warranted the death penalty and whether the aggravating circumstances outweighed the mitigating circumstances. The record supports the trial court's decision.

 Venireperson Luedde equivocated as to whether she could consider the death penalty because she felt that she does not have the power to take another person's life. She agreed that she could follow instructions from the court as to listening to aggravating circumstances and whether the death penalty was warranted. The court considering the totality of her examination and answers decided to strike her for cause. The court's decision was not an abuse of discretion based on the record.

 Venireperson Stagner stated during voir dire, "I cannot consciously sentence anyone to death" because of his moral and religious belief. He stated that he could listen and discuss with fellow jurors whether aggravating circumstances exist and whether these circumstances outweigh mitigating circumstances; however, he could find that such circumstances warrant death with some difficulty. Based on the record, the trial court did not abuse its discretion.

## XV. Denial of Challenge For Cause

Jones argues that the trial court erred by denying his challenge for cause of venireperson Merlo because Merlo knew the prosecutor and the prosecutor's parents. Merlo did not sit in this jury because appellant used a peremptory challenge against him. Under section 494.480, RSMo 1994, appellant agrees that his claim will be precluded because he

cannot show that he was prejudiced by the trial court's action. Nevertheless, he contends that section 494.480, as amended, does not apply because the alleged acts occurred before the effective date of the statute. However, this Court has rejected similar arguments on prior occasions. *See, e.g., State v. Gray,* 887 S.W.2d 369, 383 (Mo. banc 1994), *cert. denied* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995).

 Nonetheless, under the prior statute, appellant's claim will fail also because Merlo was not biased against appellant. Review of the record indicates that Merlo was unwavering in his answer that he could give defendant a fair trial and that his knowledge of the prosecutor and prosecutor's parents would not affect his judgment in the case because there was too much at stake.

### XVI. Refusal to Submit Manslaughter Instruction

Jones argues that the trial court erred by refusing to submit Instructions A (second degree murder) and B (voluntary manslaughter), which offered the jury the alternative of voluntary manslaughter. Jones alleges that there was enough evidence to support finding voluntary manslaughter because the jury could find that he was enraged with and killed the grandmother when she degraded him for his drinking and cocaine problems. Jones' proposed Instruction A instructed the jury that second degree murder required a finding that "defendant did not do so under the influence of sudden passion arising from adequate cause." The trial court rejected Jones' proposed Instruction A and instructed the jury on murder in the second degree without reference to sudden passion.

 The jury, when presented with instructions on murder in the first degree and murder in the second degree, had the opportunity to find that Jones' actions were not deliberate. Instead, the jury found the opposite. Thus, no reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented with Instruction B dealing with voluntary manslaughter. *See State v. Smith,* 944 S.W.2d 901, 919 (Mo. banc 1997), *cert. denied* — U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294

(1997). Thus, Jones was not prejudiced by the refusal to give an instruction on yet another lesser crime. *See State v. Johnston,* 957 S.W.2d 734, 751 (Mo. banc 1997). Furthermore, the review of the record does not support any instructional reference to sudden passion arising from adequate cause. For "[w]ords alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation." *State v. Redmond,* 937 S.W.2d 205, 208 (Mo. banc 1996).

### XVII. Batson Challenge

 Jones argues that the trial court erred when it denied his *Batson* challenge to the prosecutor's peremptory strike of Mr. McDonald, an African American. In Missouri, if the appellant wishes to challenge the state's peremptory strike, he must first raise the challenge by identifying the cognizable racial group to which the stricken venireperson belongs. *State v. Simmons,* 955 S.W.2d 729, 736 (Mo. banc 1997). Then, the trial court will require the state to proffer a reasonably specific and race-neutral reason for striking the venireperson. *Id.* Finally, the defendant has the opportunity to show that the proffered reasons are merely pretextual and that the strike is actually race-based. *Id.* Furthermore, the justification for peremptory strike need not rise to the level of justification for a challenge for cause. *Smith, supra* at 913.

 The state's proffered race-neutral reason for striking McDonald was that he was employed at a residential community for boys referred there by the juvenile division of the circuit court. According to the state, because McDonald's employment focuses on rehabilitating young people, he will likely be the type of person unlikely to have the capability to impose death. The above reason is sufficiently race-neutral and nonpretextual for the trial court to deny appellant's challenge.

### XVIII. Aggravating Circumstance Instruction to the Jury

Jones argues that the trial court erred by denying his motion to strike the statutory aggravating circumstance that the murder

involved depravity of mind and was outrageously and wantonly vile, horrible and inhuman, in that this aggravator, even as limited by the *Preston* factors, is so vague that the circumstance does not narrow the class of individuals eligible for the death penalty. The jury found this aggravating circumstance. In addition, the jury found another aggravating circumstance that the homicide was committed during the perpetration of or attempt to perpetrate robbery. The Court finds that the record supports both aggravating circumstances found by the jury.

▇▇▇▇ Jones' constitutional challenge of one of the aggravating circumstances is without merit. Where there is a finding of one valid aggravating circumstance beyond a reasonable doubt, this Court will affirm the death sentence. *State v. Smith,* 944 S.W.2d 901, 921 (Mo. banc 1997), *cert. denied* —— U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997). In this case, the jury found two aggravating circumstances. Even without considering the constitutional attack on one of the aggravating circumstances, this Court will affirm the sentence. Nonetheless, the constitutional attack has been rejected by this Court in the recent past. *See State v. Harris,* 870 S.W.2d 798, 813 (Mo. banc 1994), *cert. denied* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

### XIX. Proportionality Review

Jones claims that this his death sentence is excessive and disproportionate because the victims, the Knuckles family, did not want the state to seek the death penalty and the trial court to impose death. This claim has been considered and rejected above. This Court's proportionality review is set forth in section XXIII *infra.*

### XX. Testimony of Mental Health Experts

▇▇▇▇ Jones contends that the trial court erred by instructing the jury before the two mental health experts, Dr. Parwatikar (for the defense) and Dr. Armour (for the state), testified and instructed the jury again before the guilt phase deliberation that they should not use testimony of these experts about statements made to them as evidence that Jones did or did not commit the acts charged against him. Jones claims that because of these instructions, he was denied his right to present a complete defense by precluding the jury from considering evidence as to his state of mind, and that it relieved the state of its burden of proof. A similar claim was considered and rejected by this Court in *State v. Kreutzer,* 928 S.W.2d 854, 869–872 (Mo. banc 1996), *cert. denied* —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997).

### XXI. *Miranda* Violation

▇▇▇ Jones contends that the trial court erred by denying his motion to suppress the statements he made to the police and allowed the state to introduce evidence of those statements. He argues that he was subjected to custodial interrogation without being apprised of his *Miranda* rights to remain silent when he was initially subjected to custodial interrogation and that his subsequent statements, made after receiving the *Miranda* warnings, were the fruit of the earlier un-*Mirandized* interrogation. The record indicates that appellant's claim was not raised in his motion to suppress or at trial. Issues raised for the first time on appeal are not preserved for review. *Seitz v. Lemay Bank and Trust Company,* 959 S.W.2d 458, 461 (Mo. banc 1998); *Johnson v. State,* 925 S.W.2d 834, 836 (Mo. banc 1996).

▇▇▇▇ Alternatively, Jones argues that the motion court erred in denying his 29.15 motion claim that his counsel failed to present evidence that he was subjected to custodial interrogation without *Miranda* warnings that included handcuffing, fingerprinting, and fingernail scraping. The motion court granted an evidentiary hearing on this issue. The motion court found that Jones had not pleaded facts that demonstrated that he was prejudiced by his counsel's decision and had not identified any witness by name, alleged what the substance of their testimony would have been in a factual manner, and had not alleged he informed his attorney of the witness. In fact, the motion court found that the defense needed to use the testimony in question to support the testimony of Dr. Parwatikar and used the testimony in his opening statement.

In a post-conviction claim of ineffective assistance of counsel with regard to failure to investigate or produce witnesses, "a movant must identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify." *State v. Dudley*, 819 S.W.2d 51, 56 (Mo.App.1991).

## XXII. Reasonable Doubt Definition

█ Finally, Jones argues that the trial court erred by submitting guilt-phase Instruction 4 and penalty-phase Instruction 16, because they allegedly contain an improper definition of "reasonable doubt." He argues that the "firmly convinced" definition suggests a higher degree of doubt than is constitutionally required for acquittal. This Court has repeatedly rejected this argument. *State v. Owsley*, 959 S.W.2d 789, 796 (Mo. banc 1997).

## XXIII. Independent Statutory Review

This Court is required to review the sentence of death under section 565.035.3, RSMo 1994. The statute provides that:

3. With regard to the sentence, the [S]upreme [C]ourt shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both [sic] the crime, the strength of the evidence and the defendant.

*Id.*

█ The record does not indicate that the sentence of death imposed by the trial judge was imposed under the influence of passion, prejudice or any other arbitrary factor.

The evidence presented in this case sufficiently supports the jury's finding of two statutory aggravating circumstances. The jury found that the killing was outrageously and wantonly vile, horrible and inhuman in that it involved depravity of mind because Jones committed repeated excessive acts of physical abuse on his grandmother. The jury found that Jones' act of beating his grandmother several times with a butcher block and stabbing her numerous times with a knife before she stopped screaming and fell back onto her bed was brutal. *See* section 565.032.2(7), RSMo 1994. Also, the jury found that Jones was engaged in the perpetration or attempted perpetration of robbery, section 565.032.2(11), RSMo 1994. Jones, after killing his grandmother, took her car keys, money, and VCR and drove off in her car. Jones sold the VCR and rented the car to get money to buy drugs. The above evidence supports the jury's finding of the aggravating circumstances.

█ Finally, the sentence in this case was not excessive or disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence and the defendant. This case is similar to other cases in which the death penalty was imposed upon a finding of any of the above aggravating circumstances. *State v. Skillicorn*, 944 S.W.2d 877 (Mo. banc 1997) (robbery); *State v. Roll*, 942 S.W.2d 370 (Mo. banc 1997) (robbery); *State v. Taylor*, 929 S.W.2d 209 (Mo. banc 1996) (robbery, depravity of mind); *State v. Richardson*, 923 S.W.2d 301 (Mo. banc 1996) (robbery); *State v. Tokar*, 918 S.W.2d 753 (Mo. banc 1996) (depravity of mind). The strength of the evidence of Jones' guilt is very strong.

## XXIV. Conclusion

For all of the foregoing reasons, the judgment is affirmed.

All concur.