STATE of Missouri, Respondent,

v.

Gary D. LOVELADY, Appellant.

No. WD 35349.

Missouri Court of Appeals,
Western District.

April 9, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 28, 1985.

Application to Transfer Denied
June 25, 1985.

Joseph H. Locascio, Kansas City, for appellant.

John Ashcroft and Michael H. Finkelstein, Jefferson City, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

KENNEDY, Presiding Judge.

Defendant was convicted upon jury trial of first-degree burglary, § 569.160, RSMo 1978; first-degree robbery, § 569.020, RSMo 1978; and armed criminal action, § 571.015, RSMo 1978. He was sentenced in accordance with the jury's verdict to prison terms of various lengths, from 13 years to life.

· He appeals, claiming error in the admission of certain evidence, and claiming also that the trial judge erred in refusing to disqualify himself upon defendant's motion which alleged his bias and prejudice against defendant's defense of mental disease or defect excluding responsibility, Chapter 552, RSMo.

We reverse and remand for a new trial.

█ The law is very jealous of the notion of an impartial arbiter. It is scarcely less important than his actual impartiality that the parties and the public have confidence in the impartiality of the arbiter. Where a judge's freedom from bias or his prejudgment of an issue is called into question, the inquiry is no longer whether he actually is prejudiced; the inquiry is whether an onlooker might on the basis of objective facts reasonably question whether he was so. See *Roberts v. Bailar*, 625 F.2d 125, 129–30 (6th Cir.1980) (requiring federal district court judge to recuse himself under 28 U.S.C. § 455(a) (1976 & Supp.1978) ); *United States v. Gigax*, 605 F.2d 507, 511 (10th Cir.1979) (discussing objective standard of 28 U.S.C. § 455(a) ); *Reilly v. Southeastern Pennsylvania Transportation Authority*, 330 Pa.Super. 420, 479 A.2d 973, 980–81 (1984) (construing Canon 3C of Pennsylvania's Code of Judicial Conduct, which begins, as does Missouri's Canon 3C, "A judge *should* disqualify himself in a proceeding in which his impartiality might reasonably be questioned....") (emphasis added). The Supreme Court Rule states it thus: "A judge should disqualify himself in a proceeding in which his impartiality *might reasonably be questioned....*" (Emphasis added). Supreme Court Rule 2, Canon 3, Section C(1).[1]

---

1. It has been suggested that if a judge elects not to disqualify himself upon motion therefor, he should sua sponte call in another judge to hear the motion. In a case relied upon by the attorney general, *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), the trial judge did call in another judge for that very purpose, who held that no case of bias and prejudice had been made out. *See also Municipal Publications, Inc. v. Snyder*, 322 Pa.Super. 464, 469 A.2d 1084, 1093–99 (1984) (Writ of prohibition issued against trial judge who exceeded his jurisdiction in ruling on the merits of a motion to recuse him). It is not established by rule or statute in our state, although it was suggested in Judge Dixon's concurring opinion of *Berry v. Berry*, 654 S.W.2d 155, 162 (Mo.App.1983). The concurring opinion was expressly joined by three judges of the seven-judge panel, and the majority opinion, while considering it misplaced in that case, appears to have approved the principles of the concurring opinion. In *Municipal Publications, supra*, the court said:

> The question presented, therefore, is this: When a motion for recusal makes allegations that, if true, require a judge's disqualification, may the judge himself proceed to rule upon the motion? And the answer to this question is: The judge may not proceed to rule on the motion; he must refer it to another judge for

We go to the facts:

The trouble began when defendant, represented by Mr. Locascio, a special public defender appointed to represent the defendant when the public defender's office was allowed to withdraw because of a possible conflict of interest, filed a motion for a mental examination under section 552.-030.4, RSMo Supp.1982. The motion came before the trial judge for hearing on May 27, 1983. The trial judge believed that the motion had to be supported by evidence. Mr. Locascio said he had no evidence, that the motion did not need to be supported by evidence, and that defendant was entitled to the requested mental examination upon motion as a matter of right. The judge stated that in the absence of evidence the motion was "a frivolous motion as far as I'm concerned". Four times during the brief hearing he characterized the motion as "frivolous". He ordered it "dismissed with prejudice for want of prosecution".

The case came on for trial on July 11. Defendant had in the meantime filed a second motion for a mental examination, which had not been heard or ruled on. During voir dire (or perhaps after it had been completed—the record is not clear) after the noon recess on the second day the trial judge told counsel for the state and for the defendant that he was changing his ruling on the motion for mental examination. He said that a Western Missouri Mental Health Center physician could examine the defendant and could report to the court the following morning.

Mr. Locascio then stated that he would like to see the results of the mental examination before he conducted his voir dire of the jury panel. To this suggestion the judge replied:

> Mr. Locascio, your entire conduct in this case, ever since you have been employed in this case as is true in all cases, which you handle is nothing but dilatory tactics without any merit or substance, whatever.

Now, I think you have me boxed.

I think you are entirely wrong in the way you conduct yourself as an attorney but that is not my decision to make. There is absolutely no merit to this motion and you know it.

Locascio at this point requested a mistrial. He began to enumerate the grounds for his request. The first was that he was not prepared to conduct voir dire examination without knowing the results of the mental examination. The judge responded: "Mr. Locascio, the way you conducted the voir dire examination this morning makes it clear to me that even after you got the results, you wouldn't know how to conduct voir dire."

Locascio also reminded the court that the defendant would, after the court ordered a mental examination, be entitled to an examination by a physician of his own choosing.

The judge confronted Locascio with a motion which he had earlier filed in the case. The court said: "That last statement is absolutely contrary to the written motion you filed in this case. You told me in a motion filed last Friday that your client was absolutely indigent and could not afford a mental examination and now you are telling me that he can."

At length, however, the court did grant the mistrial and reset the case for a later trial.

The report of the Western Missouri Mental Health Center physician was filed on August 5. We have not been favored with the report, but apparently it found no mental disease or defect excluding responsibility and pronounced defendant competent to stand trial. Defendant then filed a motion for a mental examination by a physician of his own choosing. This motion came before the judge on August 9 and it occasioned more fireworks. This time both Mr. Locascio and Mr. O'Brien of the Public Defender's office were present for the de-

decision. If the judge does rule on the motion himself, he exceeds his jurisdiction. For by ruling himself, the judge violates the prin-

ciple, at the very foundation of our law, that no one may be judge of his own cause. 469 A.2d at 1093.

fendant. Mr. O'Brien took the lead. The court said:

There is absolutely no indication anywhere along the line that Mr. Lovelady was suffering from any mental disease, or defect in accordance with Chapter 552. I was forced to order the examination, I did order it and you got it, you're going to get the second one but there is—was not then and is not now anything at all to indicate that Mr. Lovelady was suffering from any mental disease or defect, then, or now, or that he is not competent to stand trial and not able to assist counsel, not one iota of indication. But, you got it. You're going to get your second one. It's not up to me to decide how the Public Defender spends the money. . . .

The motion for this mental examination was granted.

Defendant's motion for the disqualification of the judge followed. There was an evidentiary hearing on the motion. It was overruled, the judge declaring with respect to his utterances on August 9 quoted above:

Now, that's my exact words and what I said there is the absolute truth. There had been two motions filed for a psychiatric examination, there was no evidence offered in support of either motion, also coupled with the notice intent to rely upon the mental disease or defect but motions don't prove themselves and argument of counsel in support of motions don't prove those motions.

Also I had the mental exam performed at Western Missouri and that mental exam supported the statement I made.

What I stated was an absolute fact as of that time. . . .

I had nothing in front of me to indicate that Mr. Lovelady was suffering from any mental disease, or defect and was not competent to proceed.

Now, that was just a mere statement of fact. It indicates no prejudice, at all and I will assure counsel for both sides, that all issues which have evidentiary support will be submitted to the jury but at the time I made that statement on August 9th, it was an absolute fact.

The trial commenced August 29, 1983, and concluded with the result earlier noted.

The ruling on the motion for disqualification, as noted earlier, is assigned as error.

■ Our review must be based upon the objective facts of the record as we read it, from the standpoint of a reasonable and disinterested bystander, unacquainted with the personality, the integrity and the dedication of the judge.

The motion for the disqualification was not a frivolous motion. It was not dilatory; it was filed 20 days before the appointed trial date. There is no evidence of bad faith on the part of the defense attorneys.

There are two related features in this cause which called for the sustention of the motion for disqualification. The first feature is the judge's positive and emphatic pronouncements with reference to the tendered defense of mental disease or defect excluding responsibility, and the motions for mental examinations.

■ A judge cannot, of course, be unduly guarded in his comments during exchanges with lawyers in dealing with pretrial matters. He cannot avoid forming and giving expression to tentative opinions upon issues, based upon what he has before him. Such an opinion is not a fixed opinion. The judge can approach the issue with an entirely open mind, putting aside his tentative preliminary opinion and can rule fairly. *See United States v. Grinnell Corp., supra,* 384 U.S. at 583, 86 S.Ct. at 1710. All lawyers and judges understand this. This is no doubt the kind of hypothetical opinion expressed by the judge in the present case in his comments on defendant's motion for a mental examination.

■ Unhappily, the language employed by the judge with reference to the tendered defense and to the motions for mental examination could be interpreted as something more than a hypothetical opinion and could be interpreted to evince a fixed prejudgment of the issue of defendant's de-

fense of mental disease or defect. The requests for mental examinations when granted were granted grudgingly and only under compulsion.[2]

 The second feature which is conspicuous in this record is the judge's undisguised impatience with the defense attorneys, and with Mr. Locascio in particular, which seemed to be caused by the latter's assertion of the mental disease or defect defense and his filing of the motions for the mental examinations. This is evident, not only in those statements referred to above, but other statements in the record directed by the judge to Mr. Locascio, which we have omitted. They might reasonably be seen as coloring the judge's assessment of the mental disease defense.

Upon appellate review, the question of the judge's disqualification is viewed *as of the time of the motion.* It does not help the case, as the attorney general argues, that the trial was free of prejudicial error. The error in overruling the motion for disqualification infected all the proceedings that followed. It would usually be impossible to tell from the conduct of the trial whether the judge was prejudiced. Prejudice could influence his discretionary rulings in a most critical way and it could never be detected from the record. Furthermore, a reasonable defendant who might otherwise be disposed to waive a jury trial, Mo. Const. art. I, § 22(a), or who might consider a plea of guilty, would certainly elect to take his chances with a jury instead.

In conclusion, we hold that the trial court erred in denying defendant's motion for his disqualification. The motion for disqualification was not a frivolous motion. It was based upon the judge's repeated and emphatic characterizations of defendant's attempt to secure mental examinations as "frivolous", "dilatory", and "without any merit or substance whatever", combined with the blunt and unnecessary criticism of the defense attorney. The judge's impar-

tiality "might reasonably be questioned". In such a case it became the duty of the judge to disqualify himself, and to allow the appointment of another judge.

As to the second error asserted by defendant, the parties and the court will be guided on another trial by the law as briefed by the parties. The legal principles are clear and do not need explication here.

Judgment reversed and cause remanded for new trial.

All concur.

2. The evidence in the case when tried was deemed by the court to make a submissible

defense of mental disease or defect, which was duly submitted by appropriate jury instruction.