

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | **WD76723** |
| Respondent, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| DERRON A. WHITE, | ) | **June 9, 2015** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
**Honorable William B. Collins, Judge**

**Before Division One:**
**James Edward Welsh, P.J., Thomas H. Newton, and Karen King Mitchell, JJ.**

Mr. Derron A. White appeals his convictions for first degree robbery, section 569.020, RSMo. 2000,[1] and armed criminal action, section 571.015. We affirm.

Two armed men entered a Sonic Drive-in Restaurant in Raymore at closing—11 p.m.—on January 12, 2012. They forced employees to lie on the floor and then, while one remained with the employees, the other accompanied the manager to the safe to remove the day's cash receipts. The man described as tall and wearing a ski mask that covered his entire face could be seen on surveillance video[2] wearing a tan

---

[1] All statutory references are to RSMo. 2000 and Cumulative Supplement 2011, unless otherwise stated.

[2] The video evidence was not provided to this court.

canvas belt that came off during the robbery and remained at the scene where it was recovered by police. Through DNA testing, the belt was later matched to Mr. White's DNA profile, and he was charged with first degree robbery and armed criminal action. A woman who was charged as an accomplice for helping the men prepare for the robbery and then driving them to the restaurant testified in some detail against Mr. White during his trial as part of a plea agreement. Other testimony showed that Mr. White, who is about 6 feet tall, owned a ski or face mask.

The jury returned a guilty verdict, and Mr. White was sentenced to twenty-five years of imprisonment on the robbery count and ten years on the armed-criminal-action count, to run concurrently. The court denied Mr. White's motion for judgment of acquittal or in the alternative for a new trial, and he appeals. Other factual and procedural details are discussed below as part of the legal analysis.

**Legal Analysis**

Mr. White raises three points on appeal. He claims that the "trial court"[3] abused its discretion in failing to grant his motion for a change of judge for cause, in granting the State's strike of venire member No. 32 over objection, and in overruling his objection that the State had misstated the law on alibi during closing.

Motion for Change of Judge

The appellate court reviews a trial court's denial of a motion for change of judge for an abuse of discretion and presumes that the "trial judge will not preside over a proceeding in which the judge cannot be impartial." *Williams v. Reed*, 6

---

[3] Mr. White raises this "trial court" error without express reference either to the specially appointed judge who heard evidence and ruled on the disqualification motion or to the trial judge who denied the renewed motion without argument before voir dire. In briefing the point, however, Mr. White refers to both, and our decision pertains to the rulings of both judges.

2

S.W.3d 916, 920 (Mo. App. W.D. 1999). The test is not based on actual bias or prejudice. *Id.* at 922. Rather, it is based on whether, given the objective facts of record, a reasonable and disinterested bystander, unacquainted with the personality, integrity, and dedication of the judge, would find an appearance of impropriety. *State ex rel. McCulloch v. Drumm*, 984 S.W.2d 555, 557 (Mo. App. E.D. 1999); *State v. Lovelady*, 691 S.W.2d 364, 365 (Mo. App. W.D. 1985).[4]

> Under the Code of Judicial Conduct in effect in 2012,
>
> A judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer or knowledge of facts that are in dispute in the proceeding that would preclude the judge from being fair and impartial.

Supreme Court Rule 2-2.11(A)(1).[5]

Mr. White filed a motion for change of judge as of right during his arraignment, and the case was assigned to Judge Jacqueline A. Cook in August 2012. In December, the case was re-assigned to Judge William B. Collins, who had just prevailed in a contentious judicial election. In February 2013, Mr. Stephen C. Higinbotham, the judge's former opponent, filed an entry of appearance on Mr.

---

[4] During oral argument Mr. White's counsel argued the appearance of impropriety from the perspective of the Defendant, but this is not the test applied in Missouri courts. Nor did Mr. White argue the Defendant's interest in the arbiter's impartiality in his brief. This objective test is considered from the perspective of the reasonable, disinterested person. *Lovelady*, 691 S.W.2d at 367.

[5] Rule references are to the Code of Judicial Conduct (2012), unless otherwise stated.

White's behalf. Specially appointed by the Missouri Supreme Court, Judge Neal Quitno heard Mr. White's subsequent motion for change of judge for cause in March.[6]

During that hearing, Mr. Higinbotham's wife, law partner, and campaign manager Michelle testified about the heated 2012 judicial election. Among other matters, the Higinbothams widely and publicly aired complaints about (1) Judge Collins's courtroom demeanor and the treatment he accorded parties and their attorneys, as well as purported denial of courtroom access to the public and of defendants' access to their attorneys; (2) a DWI diversion program, which the judge had established with a single provider; and (3) complaints filed with the Ethics Commission involving alleged improprieties on the part of Judge Collins's campaign. Ms. Higinbotham also testified about her efforts to determine if the judge was putting in a full 40-hour work week. While Ms. Higinbotham testified that Judge Collins refused to discuss the issues with the press and constituents and once appeared "displeased" with the Higinbothams during a public campaign event, nothing in the record reflects, in his own words, that Judge Collins harbored any bias toward Mr. Higinbotham or toward Mr. White because he was represented by Mr. Higinbotham.[7]

Mr. White contended that the judge could not be fair and impartial in light of accusations made by counsel and disseminated to the public during the election and

---

[6] Under *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 699 (Mo. App. E.D. 1990), another judge must preside over a disqualification hearing if the judge presiding over the case may be called to testify.

[7] Mr. White does not point to any actual evidence of bias during the trial, and, in fact, probably cannot do so. On at least thirteen occasions, Judge Collins ruled in his favor, and when the court overruled nine objections, most of the time, it was done at side bar, after defense counsel simply requested that counsel approach the bench, or otherwise out of the jury's hearing. While Mr. White is correct that the court in *Lovelady* indicated that prejudice during trial "could never be detected from the record," 691 S.W.2d at 368, as discussed below, the record in that case contained sufficient evidence of the court's purported bias, in the judge's own words, before the motion was made or trial had occurred, to justify disqualification.

4

should be disqualified from presiding over his criminal jury trial due to the appearance of impropriety. Considering whether the campaign gave rise to the appearance of impropriety, Judge Quitno determined that a reasonable person would not have factual grounds to doubt the impartiality of Judge Collins and denied the motion. Mr. White renewed the motion for change of judge on the first day of trial (June 3, 2013), before the jury panel was selected, and Judge Collins peremptorily denied it, deferring to Judge Quitno's determination.

The question of Judge Collins's ability to be fair and impartial while presiding over Mr. White's criminal trial depends on whether a reasonable person could conclude that the rough-and-tumble judicial campaign in which the judge was embroiled with defense counsel, including widely disseminated public accusations of improper and unethical judicial conduct, just months before trial, created an appearance of bias and prejudice affecting the Defendant's case. *See Drumm*, 984 S.W.2d at 557.

Alleged animosity toward a criminal defendant's attorney may, but does not necessarily, warrant a judge's disqualification. *State v. Jones*, 979 S.W.2d 171, 179 (Mo. banc 1998), *cert. denied*, 119 S. Ct. 886, 525 U.S. 1112, 142 L. Ed. 2d 785 (U.S. 1999). In *Jones*, the Missouri Supreme Court examined the one instance in the trial record cited by the defendant to support a claim that animus toward defense counsel affected the trial. *Id.* at 178. The trial court had angrily accused the attorney of making "a long speech in front of the jury with a deliberate attempt apparently to influence them." *Id.* According to the high court, it was unclear whether the anger was shown out of the jury's hearing, and the defendant had not alleged facts "to show

5

that the judge was biased against him personally or against the merits of his case." *Id.* at 179. Because the judge had not disqualified himself, the supreme court stated, "we have only the record to review to determine whether this alleged animosity has in fact infected the trial with a bias whose source is extrajudicial." *Id.* Based on that record, the Missouri Supreme Court found that it was "unable to find such bias manifested to the jury that would cause us to grant a new trial." *Id.*

In *Williams v. Reed*, the trial court questioned the legal ability of a litigant's attorney when the attorney sought a change of judge on the ground of rumors about the judge's personal circumstances that were similar in some respects to those in the case, i.e., a child-custody dispute involving allegations of homosexuality on the ex-wife's part. 6 S.W.3d at 922. The rumor was that the judge's wife had filed for divorce and was similarly engaged in a homosexual relationship. *Id.* According to this court, without more, "merely possessing the view that the allegation was offensive" and expressing displeasure with the attorney, the judge was not required to recuse himself. *Id.* at 923. Examining the comments, however, in the context of all the judge's statements and actions, particularly his continuing, outraged reaction to the rumored allegations against him, "created the appearance of impropriety" and required recusal on the motion to modify custody. *Id.*

In *Drumm*, the trial judge stated during the hearing on a convicted criminal defendant's motion for new trial that he had refused her request to waive a jury when she faced trial for first-degree murder because his "objectivity was impaired" and he would have been unable to "look at any evidence that was presented to [him] and be objective in evaluating that evidence." 984 S.W.2d at 556. The court was apparently

6

convinced that the defendant had a mental disease or defect based on the psychiatric reports that had been submitted. *Id.* The appeals court determined that "a reasonable person could find an appearance of impropriety" based on these statements. *Id.* at 557. The court thus prohibited the judge from taking any further action in the matter other than to grant the State's motion for a change of judge. *Id.* at 558.

This court determined in *Lovelady* that the trial court erred in denying the defendant's motion for its disqualification. 691 S.W.2d at 368. The record showed the trial court's repeated expressions of hostility to defense counsel's conduct during motions practice before trial, the court's grudging and compelled grant of requests for mental examinations, and the court's "positive and emphatic pronouncements with reference to the tendered defense of mental disease or defect." *Id*. at 367-68. According to this court, such conduct "could be interpreted to evince a fixed prejudgment of . . . defendant's defense of mental disease or defect." *Id.*

Here, Mr. White urges the court to find that a reasonable and disinterested bystander would believe that the trial court could not be fair and unbiased because counsel engaged in a particularly aggressive judicial campaign against the court seven months before trial. Unlike the cases cited and discussed above in which disqualification was found to be warranted, Judge Collins did not make *any* statement either in the courtroom or extrajudicially in public that would support a claim that he was biased toward Mr. Higinbotham. And the only apparent non-verbal expression of the court's displeasure with counsel occurred, according to Mr. Higinbotham's wife and campaign manager, during a public event. Her testimony further characterized

7

the court's refusal to talk with constituents or the press as his discomfiture over the campaign allegations.

Mr. White does not cite a single instance during pre-trial proceedings—from the time Mr. Higinbotham began his representation in February 2013 until the disqualification motion hearing in March—reflecting animosity on Judge Collins's part toward him or prejudgment of the case merits due to the election-related "mud-slinging" engaged in by his counsel some months earlier.

Viewing the entire record, we do not find bias manifested to the jury. The court, in fact, made an effort to ensure that the jury would not have a negative view of Mr. White. Judge Collins conferred with defense counsel when the State rested its case early—a day before the defense witnesses were due to be called—on informing the jury that it would recess early, so that any inconvenience would not be attributed to the Defendant. The court then instructed the jury as requested by counsel.

Nor does the record show purported animus toward defense counsel in the jury's presence. While non-verbal communication may be difficult to discern from a trial transcript, Mr. Higinbotham did not at any time seek to preserve on the record that the judge had displayed an angry demeanor toward him. *Cf. Jones*, 979 S.W.2d at 178 (Defense counsel stated, "I would also like to make a brief record at this point. It seems as if based on the Court's tone and demeanor that it is angry with what I have just done."). We find that the court did not abuse its discretion in denying Mr. White's motion for a change of judge and deny this point.

Motion to Strike a Juror

A trial court has broad discretion in ruling on a motion to strike a juror for cause. *State v. Hopkins*, 687 S.W.2d 188, 189 (Mo. banc 1985). A reviewing court will not disturb that ruling in the absence of an abuse of discretion. *State v. Moorehead*, 438 S.W.3d 515, 518 (Mo. App. E.D. 2014).

During voir dire, venire member No. 32 indicated that he was familiar with the county prosecutor because he had been charged with child endangerment over an incident that happened in 2003. He had also been represented by Mr. Higinbotham, who successfully defended the matter on his behalf, and said that he respected counsel. Despite his familiarity with the county prosecutor and Mr. Higinbotham, venire member No. 32 said he was "positive" that nothing about the prosecution or representation would affect his ability to be fair during Mr. White's trial. The State moved to strike this venire member for cause, and Judge Collins granted the motion over Mr. White's objection.

In *State v. Turner*, 810 S.W.2d 92, 93 (Mo. App. E.D. 1991), the appeals court considered a trial court ruling that struck a juror for cause over the appellant's objection. The appellant argued that this action "in effect [gave] the State an extra peremptory challenge." According to the court, "a defendant is not entitled as a matter of right to the seating of any particular person or persons on a jury panel." *Id.* at 94. And, where the defendant fails to show that the jury panel selected was not competent, qualified, and unbiased, there is no prejudice to the defendant. *Id.* Mr. White has not argued that the selected panel members were not competent, qualified,

and unbiased; accordingly, we find that the trial court did not abuse its discretion in granting the motion to strike venire member No. 32 for cause and deny this point.

Objection to Closing Argument

Preserved claims of closing-argument error are reviewed for an abuse of discretion, and trial counsel are accorded wide latitude in their summation. *State v. Julius*, 453 S.W.3d 288, 306 (Mo. App. E.D. 2014). If a claim of error is not preserved, however, the issue on appeal is addressed as a matter of plain error, a rule used sparingly. *State v. Tokar*, 918 S.W.2d 753, 769 (Mo. banc 1996); *State v. Norman*, 178 S.W.3d 556, 560 (Mo. App. W.D. 2005).

Mr. White relied on an alibi defense, and a witness testified that he was with her in North Kansas City throughout most of the evening, including when the alleged robbery took place. She testified that he helped her pick up, bag, and deliver newspapers for the *Kansas City Star* beginning at about midnight on January 12. According to this witness, the papers had to be delivered before 5:30 a.m., and it took her and Mr. White most of that time to deliver the 300 newspapers on her route. During closing argument, the prosecutor addressed the alibi evidence by stating, "even if you were to believe what she had to say about the Defendant being with her that night, it still [is] not an alibi because he didn't have to be back there [to the newspaper distribution facility in Platte County] till the middle of the morning."[8] Mr. Higinbotham specifically objected to this "characterization . . . She testified that he was with her during the time the robbery was alleged to have occurred, which is an alibi." The court overruled the objection, stating that "[t]his is argument."

_____

[8] The prosecutor prefaced his observation by referring to the testimony of a defense witness who oversaw the newspaper's carriers and said that a 300-paper route would require about one and one-half hours for two individuals to pick up, bag, and deliver.

10

The court addressed the Defendant's alibi defense by instructing the jury:

One of the issues in this case is whether the Defendant was present at the Sonic Drive-in on or about 11:00 PM on January the 12th of 2012. On that issue, you are instructed as follows:
One, the State has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place of the offense is alleged to have been committed.
Two, if the evidence in this case leaves in your mind a reasonable doubt that the Defendant was present at the Sonic Drive-in Restaurant on or about 11:00 PM on January the 12th, 2012, then you must find the Defendant not guilty.

The State contends that Mr. White failed to object to the prosecutor's alibi statement during closing argument for the reason stated in his appeal and thus that the matter must be analyzed under the plain-error rule. We agree, noting that the Defendant's stated objection during trial challenged the prosecutor's "characterization" of the alibi testimony and not that the prosecutor misstated the law, the point raised on appeal. *See State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011) ("An issue that was never presented to or decided by the trial court is not preserved for appellate review."). As well, Mr. White's motion for judgment of acquittal or, in the alternative, for a new trial, presented this point as:

The trial court erred to the prejudice of the Defendant when it overruled the Defendant's objection to the State's closing argument that the defense did not present an alibi. Such argument was a *mischaracterization of the evidence* and improperly suggested to the jury that they should not consider the alibi defense.

(emphasis added). Mr. White has not properly preserved the error he argues on appeal.

Thus, Mr. White must demonstrate not only that the trial court's ruling was in error but that the error caused manifest injustice or a miscarriage of justice. *Norman*, 178 S.W.3d at 560. "Plain error is evident, obvious and clear error." *Id.*

11

(internal quotation marks and citation omitted). Because the court properly instructed the jury about Mr. White's alibi defense and further indicated that its members were to follow "the law as given in these instructions," Mr. White, had he claimed and briefed plain error, would have been unable to show manifest injustice or a miscarriage of justice.[9] *See State v. Hashman*, 197 S.W.3d 119, 135 (Mo. App. W.D. 2006) (stating that juries are presumed to follow instructions).

Even under an abuse of discretion standard, we cannot find error. A trial court ruling during closing argument may be reversed "only upon a showing of an abuse of discretion that resulted in prejudice to the defendant. In other words, there must be a reasonable probability that the verdict would have been different." *Julius*, 453 S.W.3d at 306 (internal citations omitted). Further, we must consider the entire record to determine whether the claimed error "was sufficiently prejudicial to have tipped the scales and thereby denied the defendant a fair trial." *Hashman*, 197 S.W.3d at 134.

The prosecutor's comment, viewed in context, was that the defense witness's assertion that it took two people five hours to complete a paper route was not credible because another defense witness had testified that it would take them an hour and a half. So even if the jurors believed that Mr. White delivered papers that night, the prosecutor suggested that the pick up and delivery could have begun at 3:30 or 4:00

---

[9] The court's instruction regarding the closing arguments and the law was as follows:

> The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law but they are not evidence. You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it; the reasonable inferences which you believe should be drawn there from and the law as given in these instructions.

a.m. to meet the newspaper's 5:30 a.m. deadline. And this timeline would accord with the testimony of a State witness who said that she drove Mr. White to North Kansas City some time after the robbery so he could deliver papers.[10] We deny this point.

**Conclusion**

Because we do not find that the trial court abused its discretion in denying the Defendant's motion for change of judge for cause and in granting the State's strike of venire member No. 32, or that the trial court committed plain error in overruling Mr. White's objection during closing argument, we affirm the convictions and sentences.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Welsh, P.J., and Mitchell, J. concur.

---

[10] The State had also introduced evidence that the police detective who interviewed the alibi witness had nothing in her report indicating that the witness told police that Mr. White had been with her for most of the evening on which the robbery took place. The prosecutor had referred to this evidence when questioning the defense witness's credibility during closing, emphasizing that she failed to take the opportunity to provide an alibi for Mr. White at the earliest opportunity, that is, when questioned by police.