

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD85228 |
| v. | ) |
| | ) OPINION FILED: |
| | ) September 19, 2023 |
| JEROMY L. JENKINS, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Cory L. Atkins, Judge**

**Before Division One:** Anthony Rex Gabbert, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Mr. Jeromy L. Jenkins ("Jenkins") appeals from the judgment entered by the

Circuit Court of Jackson County, Missouri ("trial court"), following a jury trial in which

he was found guilty of one felony count of child molestation and one felony count of

attempted statutory sodomy. He argues that the trial court erred in denying his motion for

judicial recusal. We affirm.

## Factual and Procedural Background

Jenkins does not challenge the sufficiency of evidence supporting the jury's

verdict finding him guilty of one count of felony child molestation and one count of

felony attempted statutory sodomy with a child victim under the age of twelve years old at the time of the commission of the crimes; nor does Jenkins contest his sentences for these crimes totaling twenty-five years' imprisonment.

Jenkins does not contest any evidentiary ruling made by the trial court during the jury trial; nor does Jenkins make any claim on appeal that the trial court committed any error as it relates to the trial before the jury in this criminal case.

Instead, Jenkins's claim on appeal relates to a claim of error by the trial court in failing to recuse itself because of comments it made in connection with Jenkins's fourth request for continuance and related discovery issues—matters that were all ruled in Jenkins's favor.

After his convictions by the jury and sentencing by the trial court, Jenkins timely appealed the trial court's ruling denying the pretrial motion to recuse and asserts that the trial court's error in denying the motion to recuse was error requiring this Court to reverse his criminal judgment and to remand for a new trial before a different judge. To avoid unnecessary repetition, additional facts will be set out in our analysis below.

**Standard of Review**

"We review a trial court's denial of a motion for change of judge for an abuse of discretion." *State v. Howell*, 626 S.W.3d 758, 768 (Mo. App. W.D. 2021). "There is a presumption that a judge acts with honesty and integrity and will not preside over a trial in which he or she cannot be impartial." *Id*. (internal quotation marks omitted) (quoting *Worthington v. State*, 166 S.W.3d 566, 579 (Mo. banc 2005)). "When evaluating facts in

2

support of disqualification, this Court considers the entire record." *Anderson v. State*, 402 S.W.3d 86, 92 (Mo. banc 2013).

## Analysis

In Jenkins's sole point on appeal, he asserts that the trial court erred in denying his motion for judicial recusal. He claims that he complied with the procedures for securing a change of judge for cause under sections 508.090, 508.130, and 508.140 and Rule 2-2.11 and that it was an abuse of discretion for the trial court to deny his motion for recusal.[1]

Jenkins was originally charged in December 2018. His jury trial was originally scheduled for February 3, 2020. Upon motions for continuance filed by Jenkins, the trial was rescheduled to August 17, 2020, then to May 10, 2021, and finally to November 15, 2021. On October 22, 2021, Jenkins filed a fourth motion for continuance, which was opposed by the State. The trial court held a hearing on Jenkins's motion on October 28, 2021. Jenkins argued that a continuance was needed so that discovery could be conducted by a digital forensics expert witness on two newly discovered children's iPads belonging to the child victims. Jenkins requested a thirty-day continuance.

The State argued, in part, that the case "was continued three times by the defense attorney for an expert that he's no longer even using." The trial court acknowledged: "I get it[,] which is why I have heartburn about the continuance request. It's an 1816

---

[1] We note that the three statutes relied on by Jenkins govern procedure in civil cases and are inapplicable to Jenkins's criminal case.

case.[2]  I mean we're looking at trying this in 2022, that's ridiculous.  Come back and talk to me in chambers."  The parties then held an off-the-record conference in chambers to further discuss whether to grant the continuance and allow a defense expert to testify about the newly discovered iPads.  Ultimately, the trial court resolved both issues in Jenkins's favor and stated its "[u]nderstanding that counsel has represented it will take 30 days to have that inspection done by an expert."  The trial court reset the trial date for November 29, 2021.

One week before trial, on November 22, 2021, Jenkins filed a motion for judicial recusal.  He alleged that at the October 28, 2021 hearing, the trial court made three statements on the record or in chambers regarding newly obtained electronic evidence and Jenkins's request for a continuance to investigate that evidence, stating that:  "1) this gave him heartburn and that 2) this 'didn't smell right.'  Finally, while in chambers [the judge] told defense counsel 3) he would not accept a plea from [Jenkins]."  Jenkins contended that the statements indicated a prejudgment of evidentiary issues in the case.

The trial court held a hearing on the motion for judicial recusal on November 22, 2021.  During the hearing, Jenkins's attorney explained:  "But the issue I have is the statement that was made, a couple statements that were made in chambers.  Specifically, the statement that it smelled bad, Your Honor."  Jenkins's attorney did not reference either of the other two comments cited in his motion during the hearing.  The trial court then asked for clarification on the issues that were being discussed when the statements

---

[2] Jenkins's criminal case was number 1816-CR06382-01, meaning that the criminal case was initiated in 2018.

were made. Jenkins's attorney confirmed that the parties were discussing both the possibility of a continuance and utilizing newly discovered children's iPads with corresponding expert witness testimony at trial and agreed that both issues had actually been decided in his favor. The trial court then denied the motion, and the case proceeded to trial.

"Rule 2-2.11(A) sets the standard for when a judge should recuse in a proceeding." *Howell*, 626 S.W.3d at 768 (internal quotation marks omitted) (quoting *Anderson*, 402 S.W.3d at 91). Rule 2.2-11(A)[3] provides that "[a] judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Circumstances specified in the rule as requiring a judge to recuse include those in which the judge has a personal bias or prejudice; the judge is a party to, a lawyer in, likely to be a material witness in, or has more than a *de minimis* interest in the proceeding; the judge has an economic interest in the proceeding; the judge has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits the judge to rule in a particular way in the proceeding; or the judge served as a lawyer in the matter in controversy or was a material witness concerning the matter. Rule 2-2.11(A).

"The rule is not limited to actual prejudice and also requires recusal when 'a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court.'" *Anderson*, 402 S.W.3d at 91 (quoting *State v.*

---

[3] All rule references are to I MISSOURI COURT RULES – STATE 2023.

*Smulls*, 935 S.W.2d 9, 17 (Mo. banc 1996)). "A reasonable person . . . is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge." *Martin v. State*, 526 S.W.3d 169, 183 (Mo. App. W.D. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Haynes v. State*, 937 S.W.2d 199, 203 (Mo. banc 1996)). Likewise, the appearance of judicial prejudice does not follow from every negative or hostile comment made by a trial judge against a party. *Haynes*, 937 S.W.2d at 204 (citing *United States v. Liteky*, 510 U.S. 540, 555 (1994)). Instead, prejudice is:

> [T]he attitude of personal enmity towards the party or in favor of the adverse party to the other's detriment. It is not the mere possession of views regarding the law or the conduct of a party or of his counsel. Prejudice is in the personal sense rather than in the judicial sense.

*State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. E.D. 1990). Therefore, "[a]n impersonal prejudice resulting from background experience is insufficient" to require recusal. *Id.* at 697 (citing *United States v. Hollis*, 718 F.2d 277 (8th Cir. 1983)). "A judge should withdraw from a case only when the facts show prejudice to such an extent so as to evince a fixed prejudgment and to preclude a fair weighing of the evidence." *Id.* "In cases requiring recusal, the common thread is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose." *Howell*, 626 S.W.3d at 768-69 (internal quotation marks omitted) (quoting *Worthington*, 166 S.W.3d at 579). "Whether a fact requires recusal depends on the

factual context, which gives meaning to the kind of bias that requires disqualification of a judge." *Id.* (internal quotation marks omitted) (quoting *Worthington*, 166 S.W.3d at 579).

Here, Jenkins sought to disqualify the trial court because of the prejudice allegedly demonstrated in three pretrial statements. The context of these statements demonstrates that no reasonable person would have perceived the trial court to be personally biased against Jenkins or that the trial court had fixed prejudgment on any of the evidentiary issues in the case.

First, the "heartburn" comment by the trial court was made "about the continuance request" and nothing else.[4] The *context* of this comment by the trial court was related to the fact that the continuance request by defense counsel—approximately two weeks before trial was then set to commence—was the *fourth* continuance request by the defense for a case that had been pending for almost three years.

"The decision to grant or deny a continuance is within the sound discretion of the trial court." *State v. Schaal*, 806 S.W.2d 659, 666 (Mo. banc 1991). The age of a case is a legitimate factor to consider in denying a continuance request. *See State v. Ramsey*, 864 S.W.2d 329, 338 (Mo. banc 1993). The trial court's desire to progress a three-year-old case without further delay made the trial court understandably hesitant to grant Jenkins's fourth continuance request. The trial judge was well within his legitimate discretion to consider the age of the case in reaching his decision on granting the continuance.

---

[4] Specifically, the trial court stated, ". . . I have heartburn about the continuance request. It's an 1816 case. I mean we're looking at trying this in 2022, that's ridiculous."

Furthermore, a judge "cannot avoid forming and giving expression to tentative opinions upon issues, based upon what he has before him. Such an opinion is not a fixed opinion." *State v. Lovelady*, 691 S.W.2d 364, 367 (Mo. App. W.D. 1985). The "heartburn" comment both informed the parties of his initial, legitimate legal impressions of the issue, allowing them to form legal arguments to address his concerns, and also appropriately signaled to the parties that he would not look upon future continuance requests favorably. Nonetheless, the trial court granted a continuance of thirty days and did so only after requesting the parties come to chambers to present their arguments on the issue in full. The trial court judge did not reach his decision immediately or summarily. The trial judge listened to Jenkins's arguments and then ultimately ruled in his favor.[5] The "heartburn" comment plainly did not demonstrate a personal bias or prejudice toward Jenkins.

Second, in response to Jenkins's fourth continuance request which related to "newly discovered evidence" of two children's iPads and expert witness testimony that he wished to solicit about the contents of those iPads, the trial court initially commented

---

[5] Ruling in a party's favor on an issue does not automatically dispense with the perception of bias. *State v. Lovelady*, 691 S.W.2d 364, 367-68 (Mo. App. W.D. 1985). But the facts of *Lovelady* depart significantly from the case here. In *Lovelady*, the judge initially denied Lovelady's motion for a mental examination, repeatedly decried it as frivolous, and made several comments disparaging Lovelady's attorney. *Id.* at 366-68. These comments were persistent and spanned several judicial proceedings. *Id.* And the judge later commented that he granted the motion "grudgingly and only under compulsion." *Id.* at 368. These cumulative facts demonstrated the judge's bias against Lovelady. Here, the trial court judge made at most two comments on the continuance request. Neither comment declared the motion meritless or personally attacked Jenkins's attorneys. And, the trial court granted the motion for continuance even though the trial court had discretion to deny it.

that it "smelled bad."[6]  Again, to the extent Jenkins is claiming this comment related to his continuance request, it does not demonstrate personal bias or prejudice for the same reasons as our discussion of the "heartburn" comment.  To the extent this comment relates to the late discovery of the iPads, it did not rise to the level of disqualifying prejudice because it did not express a fixed prejudgment of the admissibility of the newly discovered evidence.

The *context* of the trial court's initial skepticism of the newly discovered evidence did not arise improperly from personal enmity against Jenkins or his attorney.  Instead, the initial skepticism was based upon:  (1) the timing of seeking expert witness testimony to review the iPads—two weeks before a trial that had already been continued three times previously; (2) the source of the late production of the iPads—a woman that Jenkins previously had an extensive romantic and domestic relationship with; and (3) the evidentiary impact of these iPads that had allegedly been recently discovered by Jenkins's previous romantic partner—extremely favorable to Jenkins.  And yet, the trial court's "smelled bad" comment was preliminary and informed Jenkins's trial counsel of the trial court's concerns about the necessity of continuing the case yet again and

---

[6] In actuality, the trial court's first comment about the newly discovered evidence was that the prosecutor was confirming that there was nothing on either iPad to incriminate Jenkins and, hence, "If there's nothing on it, that's good for your client." And, Jenkins's trial counsel confirmed, "We are in a position that there is nothing there." In response, the trial court stated, "Yeah, that's great for your client."  But, after listening to Jenkins's trial counsel's explanation that the expert witness would be hired to investigate whether there was any evidence to suggest that the iPads had been tampered with, the trial court found that to be a plausible evidentiary concern, and the discovery and continuance requests were granted shortly after this explanation.

permitting Jenkins to hire another expert witness to examine the recently produced iPads by Jenkins's previous romantic partner. By providing this preliminary commentary, the trial court was conveying to Jenkins's trial counsel that the trial court had concerns so that Jenkins's trial counsel could be prepared to assuage those concerns when given the opportunity to argue the continuance motion and discovery topic. And, as evidenced by the trial court's favorable ruling for Jenkins on the newly discovered evidence and related continuance request, it is clear that the trial court did not prejudge the evidentiary issue and, instead, properly considered all of the arguments of counsel[7] before ruling on the motion and related discovery issues.

Third, Jenkins cites to an off-the-record comment by the trial court that it would not accept a guilty plea from Jenkins. Jenkins fails to cite any *context* for this alleged comment by the trial court and ignores the reality that a criminal defendant has no right to compel the trial court to accept a guilty plea. *State v. Osborn*, 504 S.W.3d 865, 872 (Mo. App. W.D. 2016) (citing *North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970)). And, "it is well settled that a trial court may exercise its sound discretion to reject a guilty plea." *State v. Creamer*, 161 S.W.3d 420, 425 (Mo. App. W.D. 2016). On its face, then, the comment complained of by Jenkins expresses a legal commentary that was within the trial court's sound discretion. Without identifying anything more to reflect an improper

---

[7] In fact, when the prosecutor argued Jenkins should have been required to interview the investigating detective and to rely upon the detective's testimony that there was nothing incriminating about any of the contents of the iPads, the trial court cut off the prosecutor with the following comment: "You don't get to pick who [Jenkins's] expert is going to be."

10

basis for the comment by the trial court, Jenkins cannot demonstrate any appearance of disqualifying prejudice.[8]

Furthermore, as to all of Jenkins's complaints of the trial court's comments on appeal, "[e]xpressions of annoyance that are within the bounds of what imperfect men and women sometimes display do not create bias." *In re C.H.*, 412 S.W.3d 375, 388 (Mo. App. E.D. 2013). All of the trial court's comments were, at worst, expressions of annoyance upon receiving a continuance request to review "new" evidence purportedly found just weeks before trial in a case that had already been pending for nearly three years. However, upon our consideration of the entire record before us and reviewing the *context* in which the trial court's comments were made, we conclude that there simply is nothing about the trial court judge's comments demonstrating a personal bias against Jenkins or an inability to consider the issues impartially. Instead, his statements reflected his judicial opinion on issues legitimately before him and likely annoyance at the last-minute request to continue an old case. Neither is a basis for disqualification.

The objective facts on the record before us do not demonstrate "a factual basis from which a reasonable person could infer that [the trial judge] . . . prejudged any issue in the case or that [the trial judge] . . . based his . . . ruling [denying Jenkins's motion for

---

[8] We note that Jenkins was actually *acquitted* of one of the counts the State pursued against him. Perhaps that acquittal was related to the newly discovered evidence that was being discussed at the time the trial court allegedly made the off-the-record comment complained of on appeal. That would certainly provide reasonable *context* for the comment of the trial court. *See State v. Osborn*, 504 S.W.3d 865, 873 (Mo. App. W.D. 2016) (referring to the obligation of a trial court to refuse to accept a guilty plea without first determining that there is a factual basis for the plea).

recusal] on some illegitimate factor." *Haynes*, 937 S.W.2d at 204. The motion for recusal was substantially insufficient; the trial court did not abuse its discretion in denying it.

Jenkins's point on appeal is denied.[9]

**Conclusion**

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Anthony Rex Gabbert, Presiding Judge, and Lisa White Hardwick, Judge, concur.

---

[9] Jenkins also asserts that the trial court erred in not ordering a hearing on his recusal motion before a different judge, relying on *Elnicki v. Caracci*, 255 S.W.3d 44 (Mo. App. E.D. 2008). In *Elnicki*, the court determined that the trial court's comments were based upon an extrajudicial source, were indicative of the trial court's prejudice against the party, and a hearing on the record was required. *Id*. at 50. The court instructed that, "If the challenged judge is to testify, the hearing must be held before another judge." *Id*. *Elnicki* is distinguishable in that there is no evidence that the statements allegedly made by the trial judge in this case had an extrajudicial source, and Jenkins did not argue that the trial judge should testify. Furthermore, in *Martin v. State*, 526 S.W.3d 169 (Mo. App. W.D. 2017), this Court explained that "[i]f the motion to disqualify is substantially insufficient, the trial judge is not required to have another judge hear the recusal motion." *Id*. at 189-90 (internal quotation marks omitted) (quoting *Anderson v. State*, 402 S.W.3d 86, 91 n.1 (Mo. banc 2013)).