**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lester WESTENFELDER,**
**Defendant–Appellant,**

**No. 02–1686.**

United States Court of Appeals,
Sixth Circuit.

July 10, 2003.

Before MARTIN, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and O'MALLEY,* District Judge.

PER CURIAM.

Following a bench trial, defendant Lester Westenfelder appeals his perjury conviction. The perjury charges stemmed from testimony that Westenfelder, an accountant, gave at a criminal trial for a client charged with evasion of ammunition excise taxes. On appeal, Westenfelder argues that the district judge effectively deprived him of his Sixth Amendment right to counsel by finding him guilty prior to closing arguments, and he contends that he is therefore entitled to a new trial. In the alternative, Westenfelder argues that we should remand the case to the district

* The Hon. Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

court for *in camera* review of grand jury testimony that he insists would corroborate his trial testimony. Because we find no violation of the right to counsel and no valid reason to remand this case to the district court, we affirm the judgment entered there.

 Charged in a seven-count indictment, the defendant waived his right to have the charges heard by a jury and proceeded to trial before the district judge. At the close of proof, the district judge made the following remarks:

Gentlemen, as I see it, there's only one issue for me to have to decide. The statute provides knowingly, and the instruction reads, defendant knew the statements were false when he gave the testimony. We tell a jury an act is done knowingly if it's done voluntarily and intentionally and not because of mistake or accident or other innocent reason. As far as I'm concerned, the statements were false in his testimony, all of them. The grand jury I'll deal with separately, those two, but the statements at trial were false, he's admitted they were false, and they were material. It was the basis of his testimony that the acquittal was obtained, in my judgment reading the final argument.

The purpose of adding the word knowingly is to ensure that no one will be convicted for an act done because of mistake or accident or other innocent reason. I'm not impressed with the psychological testimony, that somehow he confabulated. I don't know why he testified the way he did at trial.

I'll give you an opportunity to file a brief, if you want it, or have oral argument on it.

\* \* \* \* \* \*

So what I suggest that we do because of the seriousness of this is put it over for oral argument formally. I don't want to do it now. You can get these remarks, they are somewhat disjointed, but I'm not giving you anything more than the first thing that someone would say if they went into a jury room and started to discuss the evidence. The first juror out of the box would say all of that. . . .

The following colloquy with defense counsel then ensued:

COURT: Mr. Mullkoff, do you want to say anything?

DEFENSE COUNSEL: In my closing argument I do.

COURT: Not yet. I want to give you a chance to think about your closing argument in light of these comments.

DEFENSE COUNSEL: I appreciate that.

Some three weeks later, the district judge heard closing argument. Comments that he made at that time indicate to us that he had not closed his mind prior to entertaining argument from the defendant's counsel.

The defendant nevertheless contends that the district court judge deprived him of his Sixth Amendment right to counsel by effectively finding him guilty prior to closing arguments. It is well-settled, of course, that a trial court may not deny a criminal defendant the opportunity to make closing arguments, regardless of whether the case is tried before a jury or a judge. *See Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). In *Herring,* the Supreme Court explained the import of closing arguments as follows:

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and that the innocent go free. In a criminal trial, which is in the end basically a factfind-

ing process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

*Id.* at 862. Any interference with the defense counsel's function "in accord with the traditions of the adversary factfinding process" is a violation of the Sixth Amendment. *Id.* at 857.

The defendant argues that in this case just such a violation occurred when the district judge found him guilty at the close of proof, thus rendering the closing arguments meaningless. This, according to Westenfelder, was the functional equivalent of an outright denial of the opportunity to make closing arguments. We disagree. The comments of the district court judge are a far cry from the comments of the magistrate judge in *United States v. King,* 650 F.2d 534 (4th Cir.1981), on which Westenfelder relies. In that case, the judge found the defendant guilty immediately after the parties had rested their cases. When the defense attorney informed the judge that he had not intended to waive closing argument, the judge replied, "Go ahead if you want to argue it. I have already made my finding. It's not going to change anything...." *Id.* at 536. During Westenfelder's trial, by contrast, the judge specifically noted that he wanted defense counsel to consider his comments in preparing for closing argument and expressed uncertainty as to whether Westenfelder had made the false statements knowingly.

A defendant is not denied the effective assistance of counsel when "permitted to make his closing argument to an attentive, open-minded trier of fact." *United States v. Price,* 795 F.2d 61, 64 (10th Cir.1986). Although the district court judge revealed his tentative impressions about the evidence before closing argument, equating the judge's comments with an absolute refusal to hear or consider closing arguments is simply not justified. Because we conclude that the facts in this case are not controlled by *King* and that no constitutional violation occurred with regard to closing arguments, we find no error.

■ Nor do we find merit to the defendant's request for a remand. There was no timely written request for discovery of the grand jury transcripts, there is no contention that the prosecution failed to disclose *Brady* material, and the defendant has not suggested that his counsel's performance was deficient in any respect. He simply requests that this court remand the case for *in camera* inspection "to determine whether such evidence may have impacted the court's finding."

This we decline to do, recognizing that "[o]rdinarily, the courts of appeals do not consider claims or arguments that were not raised in the district court." *United States v. Hayes,* 218 F.3d 615, 619 (6th Cir.2000). Although the defendant argues that his request for remand falls within the "miscarriage of justice" exception to this general rule, *see United States v. Pickett,* 941 F.2d 411, 415 (6th Cir.1991), he has failed to provide any factual or legal basis in support of this assertion.

For the reasons set out above, we find no reversible error with regard to any of the issues raised on appeal, we decline the defendant's request to remand, and we AFFIRM the judgment of the district court.