Terrance L. ANDERSON, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 92101.

Supreme Court of Missouri,
En Banc.

June 11, 2013.

William J. Swift, Public Defender's Office, Columbia, MO, for Anderson.

Daniel J. McPherson, Attorney General's Office, Jefferson City, MO, for the State.

PATRICIA BRECKENRIDGE, Judge.

Terrance Anderson appeals the judgment overruling his Rule 29.15 motion for post-conviction relief from his sentence of death for first-degree murder. On appeal, Mr. Anderson claims that the judge presiding over his post-conviction proceedings erred in overruling his motion to disqualify the judge for cause because, on the record of the proceedings, a reasonable person would find an appearance of impropriety in the judge's references to extrajudicial information from the foreperson of the jury in Mr. Anderson's first trial and statements indicating that the judge had prejudged issues raised in his post-conviction motion. Mr. Anderson also claims that the court erred in overruling his claims that counsel representing him in the penalty-phase retrial were ineffective for failing to call certain witnesses, failing to make objections during the trial, failing to advise him not to testify, and in failing to challenge his sentence as disproportionate. He further claims that his counsel on direct appeal from his sentence of death was ineffective for failing to challenge Mr. Anderson's sentence as disproportionate. Because the judge's references in the record to extrajudicial information suggest the judge relied on that information in ruling on Mr. Anderson's Rule 29.15 motion, a reasonable person could find an appearance of impropriety. Recusal of the judge is required. The judgment is reversed, and the cause is remanded for the judge to sustain Mr. Anderson's motion for disqualification and for further proceedings thereafter.

## Factual and Procedural Background

In 2001, a Cape Girardeau County jury found Mr. Anderson guilty of two counts of first-degree murder for killing Stephen and Debbie Rainwater, the maternal grandparents of his child. For Stephen's murder, the jury recommended Mr. Anderson be sentenced to life in prison without probation or parole. For Debbie's murder, the jury recommended that Mr. Anderson be sentenced to death. The trial court imposed the recommended sentences. This Court affirmed the convictions and sentences on appeal. *State v. Anderson*, 79 S.W.3d 420 (Mo. banc 2002). Mr. Anderson then filed a Rule 29.15 motion for post-conviction relief, which the circuit court overruled. On appeal, this Court reversed the death sentence for Debbie's murder and remanded the case for a retrial of the penalty phase. *Anderson v. State*, 196 S.W.3d 28 (Mo. banc 2006). At the penalty-phase retrial, Mr. Anderson again was sentenced to death. He appealed that sentence, and this Court affirmed. *State v. Anderson*, 306 S.W.3d 529 (Mo. banc 2010).

On July 15, 2010, Mr. Anderson filed a *pro se* Rule 29.15 motion for postconviction relief challenging various aspects of his penalty-phase retrial. On September 3, 2010, Mr. Anderson filed motions requesting that the court order him transported to a medical facility so that he could undergo two medical tests to determine whether he suffered brain damage from the circumstances of his birth and from repeated physical, mental, and emotional abuse as a child. The judge assigned to hear this Rule 29.15 motion had presided over Mr. Anderson's first trial, his first Rule 29.15 motion hearing, and the penalty-phase retrial. As part of this Rule 29.15 proceeding, the judge heard the motions to transport on September 13, 2010.

At the beginning of the hearing regarding the motions to transport, the state announced that it did not object to the court sustaining the motions. The court then stated, "Well, haven't we been down this road before?" Defense counsel responded that the requested tests, an MRI and an EEG, never had been performed on Mr. Anderson although recommended by a psychiatrist and neurologist at the time of the first trial. Counsel informed the court that the doctors still have the same recommendation; in fact, the psychiatrist recommended the requested testing at the time of the sentencing retrial. Counsel noted that Mr. Anderson's counsel in the penalty-phase retrial did not present any mental health evidence. The motion court then said, "It seems to me that that was so discredited [at] the first [trial], that it was not necessary to put it on the second time."

Mr. Anderson's counsel responded that there was no way to know whether the mental health evidence was discredited because the jury in the first trial was not polled about why they did not give Mr. Anderson a life sentence for the murder of Debbie Rainwater. Counsel stated that mental health evidence was admitted only in the guilt phase of the trial in which Mr. Anderson was found guilty of the two murders and that there was no objective evidence to support the mental health evidence presented. Counsel also stated that counsel wanted to investigate the evidence for its relevance to mitigation in the penalty-phase retrial.

The motion court stated:

I can only speak about a conversation I had with the foreperson of the first jury, giving me his insight on the matter. He's no longer alive, however.... I think basically his point was pretty well trashed, and they didn't believe him.

That's just off the record conversation long after it happened.

Counsel argued that Mr. Anderson may have suffered brain damage from the circumstances of his birth, his mother's history of epilepsy, and prior neurological testing showing abnormalities. Despite counsel for the state's prior statement that he did not object to the court sustaining the motions to transport, the motion court inquired whether the state objected to an order to transport for testing. Counsel said, "The State doesn't buy any of it" but was not objecting to the defense attempting to develop evidence. The motion court stated that it did not "buy any of it, either" but would sustain the motions in an abundance of caution to avoid it from becoming an issue later.

On October 18, 2010, Mr. Anderson filed his amended Rule 29.15 motion challenging the death sentence he received at the penalty-phase retrial. The amended motion included the claim that his counsel at the penalty-phase retrial provided ineffective assistance because they failed to call Dr. Lewis, a psychiatrist, and Dr. William Holcomb, a neurologist, as expert witnesses to testify about statutory and non-statutory mitigation. One week later, Mr. Anderson filed a motion to disqualify the motion judge from presiding over his Rule 29.15 proceeding. He asserted the court's comments, both on and off the record at the September 13 hearing, suggested that the court had prejudged the mental health evidence and could not be fair and impartial. He alleged that in an off-the-record conversation at the September 13 hearing, the motion court handed Mr. Anderson's counsel and the state's attorney copies of a 2004 *New Yorker* article about Dr. Dorothy Lewis, the psychiatrist Mr. Anderson called to testify in Mr. Anderson's first trial regarding his mental health issues. He further alleged that that the motion court stated, off the record, that the 2004

*New Yorker* article showed Dr. Lewis was a "frequent flyer" with the Missouri public defender system and was "not believable."

The motion court heard the motion to disqualify. At the hearing, Mr. Anderson's counsel argued that the court's statements on and off the record supported Mr. Anderson's claim that the motion court had prejudged the mental health evidence and, in doing so, was relying on the court's extrajudicial conversations with the jury foreperson from the first trial. In explaining his prior conversation with the foreperson of the jury in Mr. Anderson's first trial, the motion court stated:

> Well, the only point I was trying to make was that it appeared from the comments of the foreperson of the jury that the use of Ms. Lewis or Dr. Lewis, I should say, was ineffective. That was a decision made by the jury, not by the Court. Frankly, I agree with what they thought, but that doesn't mean I can't listen to what Dr. Lewis has to say at sometime in the future and decide if it's appropriate then. I had the impression, in all candor, that the jury wasn't impressed by the psychiatric evidence on either side, but that's the conversations sometime past. The fellow who was the foreperson of the jury was a member of the church that I attend, and from time to time he would just ask what the status of the case was and made some comments from time to time. He was just curious and interested what all was going on. He's, as I said, is [sic] since deceased. I think my conversations with him were pretty well limited to that. People made comments from time to time about what their impressions were, and those were his impressions, and I'm not sure if he's speaking for the jury or not. He purported to be, but I'll just take it for his value alone. I am going to deny the motion.

Thereafter, the judge presided over the evidentiary hearing on Mr. Anderson's Rule 29.15 motion and overruled the motion. During the hearing, Mr. Anderson's counsel in the direct appeal of his penalty-phase retrial was questioned about Mr. Anderson receiving the death penalty for the murder of Debbie Rainwater and a sentence to life without parole for the murder of Stephen Rainwater. At the end of the questioning, the motion court referenced his conversations with the jury foreperson in the first trial. The judge stated that he was curious as to the reason the jury recommended one death sentence and one life sentence. He said the jury foreperson explained that the jury did not recommend death for Stephen Rainwater's murder but did for Debbie Rainwater's murder because the jury was offended that "the grandmother, Debbie, was holding the baby at the time she was killed, and that's what put them over." Counsel for Mr. Anderson objected to "the insertion" of any statement from the jury foreperson because the defense had no chance to talk to the foreperson or cross-examine him. In response, the court stated:

> You are correct. I'm not taking that into consideration in my decision of this matter. I'm just explaining for the benefit of the person that worked on the appeal why the jury did what they did according to him, and he is now deceased.

In the motion court's findings of fact regarding Mr. Anderson's claim that his trial counsel were ineffective for failure to call Dr. Lewis to testify in his penalty-phase retrial, the motion court referenced his conversation with the jury foreperson, stating:

> During [appellate counsel's] testimony, the Court related on the record a conversation he had with the jury foreman who indicated that the reason Movant

received death for the murder of Debbie Rainwater, but not Steven Rainwater, was because the jury was troubled by Movant shooting Debbie while she held the baby. The Court makes it clear that it has not considered this information in making any decision about this case, but provided it to [appellate counsel] to help her understand the jury's verdict.

In the court's conclusions of law regarding the same claim, the motion court stated, "The Court is aware that the first jury did not find Dr. Lewis credible and informed the parties of this fact."

Mr. Anderson appeals the motion court's overruling of his second Rule 29.15 motion to this Court. Because Mr. Anderson was sentenced to death for Debbie Rainwater's murder, this Court has jurisdiction. Mo. Const. art. V, sec. 10; order of June 16, 1988.

### Appearance of Impropriety
### Requires Recusal

In his first point, Mr. Anderson claims that the judge erred in failing to sustain Mr. Anderson's motion to disqualify for cause. Mr. Anderson argues that recusal is required because the judge's references to his extrajudicial conversations with the jury foreperson from Mr. Anderson's first trial and comments indicating that he had prejudged the mental health issues are evidence that would give a reasonable person factual grounds to find an appearance of impropriety and doubt the impartiality of the court.

 Rule 2–2.11(A) sets the standard for when a judge should recuse in a proceeding. Rule 2–2.11(A) provides that "[a] judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."[1] This includes situations where "[t]he judge has a personal bias or prejudice concerning a party . . . or knowledge of facts that are in dispute. . . ." Rule 2–2.11(A)(1). The rule is not limited to actual prejudice and also requires recusal when "a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court." *State v. Smulls*, 935 S.W.2d 9, 17 (Mo. banc 1996).

> Whether a fact requires recusal depends on the factual context, which gives meaning to the kind of bias that requires disqualification of a judge. Specifically, a disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from the judge's participation in a case. In cases requiring recusal, the common thread is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose."

*Worthington v. State*, 166 S.W.3d 566, 579 (Mo. banc 2005) (quoting *Smulls v. State (Smulls II)*, 10 S.W.3d 497, 499 (Mo. banc 2000)) (internal citations omitted). When the judge appears to be biased by "an extrajudicial source [that] results in an

---

1. "If sufficient facts to require recusal are not known to the judge but are contained in an affidavit in support of a motion to disqualify the judge, another judge must be assigned the case, at least for the purpose of deciding the motion to disqualify. By the same standard, if the motion to disqualify is substantially insufficient, the trial judge is not required to have another judge hear the recusal motion." *State v. Jones*, 979 S.W.2d 171, 179 (Mo. banc 1998). However, best practice remains for a circuit judge to have another judge preside over any hearing in which a motion for that judge's recusal or disqualification is to be decided.

opinion on the merits on some basis other than what the judge has learned from the judge's participation in a case," this Court may require disqualification. *Smulls II*, 10 S.W.3d at 499.

When evaluating facts in support of disqualification, this Court considers the entire record. *Id.* at 504. Though generally the trial court's judgment as to recusal is reviewed for an abuse of discretion, in cases in which a trial court may not have considered certain facts relevant to disqualification, an appellate court should determine whether those facts are sufficient to require recusal or, at a minimum, a hearing on the record. *Id.*

In this case, Mr. Anderson does not claim that the motion court had a personal bias or prejudice. Rather, Mr. Anderson claims there is an appearance of impropriety because the motion court appears to have considered information from a source outside the judge's participation in the case. *See State v. Cella*, 32 S.W.3d 114, 119 (Mo. banc 2000) ("[A] disqualifying bias and prejudice is one with an extrajudicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case."). He also asserts that the motion court's statements in the record create the appearance of impropriety that the judge prejudged Mr. Anderson's claim that his counsel was ineffective for failure to present mental health evidence as mitigation in the penalty-phase retrial.

It is presumed that a judge acts with honesty and integrity and will not preside over a hearing in which the judge cannot be impartial. *Worthington*, 166 S.W.3d at 579. In court-tried matters, trial courts also are trusted to render a decision based only on proper evidence. *See, e.g. State v. McMillin*, 783 S.W.2d 82, 96 (Mo. banc 1990) ("Where a judge, rather than a jury, is the trier of fact, the reviewing court presumes that inadmissible evidence is not prejudicial."), *abrogated on separate grounds by Morgan v. Illinois*, 504 U.S. 719, 725 n. 4, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). A post-conviction relief movant, therefore, has the burden of showing bias or prejudice. *Prince v. State*, 390 S.W.3d 225, 238 (Mo.App. W.D. 2013). *See also Thomas v. State*, 808 S.W.2d 364, 366 (Mo. banc 1991). That burden does not require a movant to prove that the motion court was actually biased or prejudiced but rather that a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court. *Smulls v. State (Smulls III)*, 71 S.W.3d 138, 145 (Mo. banc 2002).

The factual grounds Mr. Anderson uses to show the motion court's reliance on extrajudicial evidence are the motion court's multiple references to the judge's out-of-court conversations with the foreperson of the jury in Mr. Anderson's first trial. The statements of the foreperson were clearly extrajudicial because they were not made on the record so that they could be preserved and available for review. *See State v. Blankenship*, 830 S.W.2d 1, 12 (Mo. banc 1992) (reason for rejecting extrajudicial statements is that the only evidence showing the statement was made is the written or oral recitation of the out-of-court statement by another person). Mr. Anderson did not have an opportunity to cross-examine the foreperson to challenge his veracity or the basis for his conclusions. *Black v. State*, 151 S.W.3d 49, 55 (Mo. banc 2004) (the right to cross examine witnesses is essential and indispensable, and a trial judge may not exclude cross-examination at all regarding a proper subject). Equally important, no ruling on the admissibility of the statements of the foreperson was ever

made. "A juror who has reached his conclusions on the basis of evidence presented for his consideration may not have his mental processes and innermost thoughts put on a slide for examination under the judicial microscope." *Baumle v. Smith*, 420 S.W.2d 341, 348 (Mo.1967) (quoted in *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 87 (Mo. banc 2010)). Jurors may speak only through their verdict. *Ledure v. BNSF Ry. Co.*, 351 S.W.3d 13, 23 (Mo.App. S.D.2011) (quoting *Williams v. Daus*, 114 S.W.3d 351, 364 (Mo.App. S.D.2003) (en banc)). For these reasons, the statements of the foreperson were improper extrajudicial information.

■■■ During the proceedings on Mr. Anderson's Rule 29.15 motion challenging his death sentence for the murder of Debbie Rainwater, the motion court did not expressly state that it decided Mr. Anderson's motion based on extrajudicial information. That, however, is not the standard the law requires. The motion court first referenced the out-of-court conversations with the jury foreperson from the first trial during the hearing on Mr. Anderson's motions to transport for testing. In the hearing, the court told the prosecutor and Mr. Anderson's counsel, "I think [Mr. Anderson's] point was pretty well trashed, and [the first trial jury] didn't believe him." When the state said it did not "buy any of" the defendant's claim of poor mental health, the motion court said, "I don't buy any of it either. . . . ." He then mentioned his conversation with the first jury foreperson.

In his motion for recusal, Mr. Anderson also alleges that, at the same hearing, the motion court handed Mr. Anderson's counsel a 2004 *New Yorker* article regarding Dr. Lewis and made comments that the article showed that Dr. Lewis was a "frequent flyer" with the Missouri public defender system and was "not believable."

Because the discussion regarding the *New Yorker* article was off the record, the statements made by the trial court are not available to this Court. Nevertheless, the state concedes that the article was given by the court to counsel at the hearing regarding the motions to transport. The state argues that this act does not show a lack of impartiality and, instead, was the motion court sharing an article the court thought might be of interest to the attorneys. It is significant, however, that the article was published in 2004 and was not then a current article that the judge might have happened to read. The date of the article creates a reasonable inference that the court had procured this information regarding Mr. Anderson's mental health expert.

During the hearing regarding Mr. Anderson's motion to disqualify the judge for cause, Mr. Anderson's counsel raised the motion court's previous conversations with the jury foreperson. The motion court responded that the foreperson had told him Dr. Lewis was ineffective and had presented his own views as those of the entire jury. The motion court admitted it agreed with the foreperson but stated that it could fairly judge the evidence from Dr. Lewis.

During the hearing on Mr. Anderson's Rule 29.15 motion, the motion court again referenced its conversations with the jury foreperson. At the conclusion of the testimony from Mr. Anderson's attorney in the direct appeal from the penalty-phase retrial, the judge stated that the jury foreperson had told him the jury had recommended a life sentence for Stephen Rainwater's murder but death for Debbie Rainwater's murder because Debbie had been holding the baby at the time Mr. Anderson killed her. According to the motion court, "that's what put them over." When Mr. Anderson's counsel objected to

the court's reference to the extrajudicial statements of the jury foreperson, the court stated that it was "not taking that into consideration in my decision of this matter. I'm just explaining for the benefit of the person that worked on the appeal why the jury did what they did according to him, and he is now deceased." The court's interest in sharing the jury's basis for its death sentence with appellate counsel is evidence that the court believed the foreperson's statements regarding the jury's reasoning.

Finally, the motion court referred to the extrajudicial information from the jury foreperson twice in the judgment entered in the case. In its findings of fact, the court acknowledged its statements during the hearing relating the conversations with the jury foreperson during which the foreperson told the judge that Debbie Rainwater's death while holding her daughter's baby was the reason for the jury's more severe sentencing recommendation in her case. In its findings, the court stated, "The Court makes clear that it has not considered this information in making any decision about this case, but provided it to [Mr. Anderson's appellate counsel] to help her understand the jury's verdict." In its conclusions of law, the court stated, "Trial counsel was not ineffective in concluding that a claim of diminished mental capacity was not successful, and would not be successful with a second jury. The Court is aware that the first jury did not find Dr. Lewis credible and informed the parties of this fact." This reference suggests that the court's conversations with the jury foreperson were among its reasons for finding that Dr. Lewis was not a credible witness.

Based on the motion court's statements throughout the proceedings on Mr. Anderson's Rule 29.15 motion, a reasonable person would have factual grounds to believe the motion court relied on its conversations with the jury foreperson, the *New Yorker* article or both in deciding issues in the case. While the court expressly stated that it did not consider the information regarding the jury's reasons for giving Mr. Anderson a sentence of death for the murder of Debbie Rainwater, the court's sharing of the jury's reasoning with Mr. Anderson's appellate counsel indicates the court's belief of the foreperson's statements. Additionally, while the court stated during the hearing on the motion to recuse that it would listen to Dr. Lewis' future testimony and decide if counsel were ineffective for failure to present mental health evidence, other comments during the proceedings suggest that the court considered extrajudicial information regarding the first jury's reaction to the mental health evidence. Someone not acquainted with the judge's record of integrity, which is evidenced by his openness regarding his conversations with the foreperson, reasonably could believe that his decision to overrule Mr. Anderson's Rule 29.15 motion was influenced by the information obtained outside the judicial proceedings in Mr. Anderson's case. For that reason, the judge erred in failing to recuse himself.

### Conclusion

The motion court's multiple references during the proceedings regarding Mr. Anderson's Rule 29.15 motion to the judge's extrajudicial conversations with the foreperson of the jury in Mr. Anderson's first trial give a reasonable person factual grounds to find an appearance of impropriety. Accordingly, recusal is required. Because this claim of error is dispositive, Mr. Anderson's other claims need not be addressed. The judgment is reversed, and the cause is remanded for the judge to sustain Mr. Anderson's motion for disqualification and for further proceedings.

TEITELMAN, C.J., RUSSELL, FISCHER, STITH and DRAPER, JJ., concur.

WILSON, J., not participating.