James Edward Welsh, Presiding Judge
Miguel McIntosh appeals his convictions, following a bench trial, on one count of first-degree statutory sodomy ( § 566.062, RSMo[1] ), and one count of first-degree child molestation (§ 566.067). We affirm.
Background
In March 2013, the State charged McIntosh with first-degree statutory sodomy *421 and first-degree statutory rape based on allegations that he had licked his nine-year-old cousin's vagina and anus. McIntosh waived his right to a jury trial in exchange for the State's agreement that he would not be sentenced to more than twenty years' incarceration if found guilty. The case proceeded to a bench trial in January 2016. Viewed in the light most favorable to the verdict,[2] the evidence at trial showed the following:
On March 12, 2013, the victim in this case (whom we refer to as "TJ")[3] was staying at her grandmother's house while her mother was in the hospital. TJ's twenty-year-old cousin, Miguel McIntosh, lived at their grandmother's house. TJ testified that, at around 9:30 or 10:00 p.m. that night, McIntosh came into her bedroom. McIntosh first told her "not to worry" about him, but then he grabbed her arm, flipped her onto her hands and knees, and held her down. He removed her pajama bottoms and underwear and then licked her anus and her vagina. McIntosh let TJ go when she said that she had to go to the bathroom. TJ instead ran to Grandmother's bedroom and told her what had happened. Grandmother confronted McIntosh with what TJ had told her and told him that he had to leave. McIntosh did not respond but gathered his belongings and left.
TJ was first interviewed at school by an investigator with the Children's Division. She then was referred to the Child Protection Center for a forensic interview. Kristin Gilgour testified that she interviewed TJ for the Child Protection Center, and the State introduced a video recording and transcript of that interview into evidence. The State also introduced a video recording of McIntosh's interrogation by the police and played that for the court. During the interrogation, McIntosh acknowledged that he had engaged in the acts that TJ had alleged. A letter of apology that McIntosh had written to TJ also was admitted into evidence.
The State also presented the testimony of Grandmother and of TJ's mother. Grandmother confirmed that, while McIntosh and TJ were staying with her in March 2013, TJ came to her one night and reported that McIntosh had done something sexual to her. Mother testified that Grandmother was caring for TJ while Mother was having a baby and that TJ told her McIntosh had attempted to sexually abuse her at that time.
After the close of the State's evidence, defense counsel announced that she had no evidence to present and submitted a motion for acquittal at the close of all the evidence. Both sides made brief arguments on the motion focusing on whether the State had to prove penetration on the statutory sodomy charge. The court overruled the motion and then announced:
Okay, so considering the evidence in the case and the information in lieu of indictment on Count I ..., the Court finds that the defendant is guilty and that the State has proven beyond a reasonable doubt each of the elements of the crimes charged, and, therefore, finds the defendant guilty on Count I of Statutory Sodomy in the First Degree.
On Count II, the Class B felony of Child Molestation in the First Degree, the Court finds the defendant guilty and finds that the State has proven beyond a reasonable doubt each and every element of the [crime], in that the defendant *422 knowingly subjected [TJ] who was then under 14 years of age to sexual contact by putting his tongue on her anus for the purpose of arousing or gratifying his own sexual desire.
And the Court having made those findings will request a Sentencing Assessment Report, and we can set a sentencing hearing now or we can wait until we receive that, the SAR.
The prosecutor agreed to set a date for sentencing, but defense counsel objected to the lack of closing argument, stating:
Your Honor, I am not trying to cause any problems; however, I think I'm going to, I think so that the record is clear, I'm going to object to the fact that we were not allowed to make a closing argument.
The trial court acknowledged its mistake in issuing a verdict without hearing closing argument:
THE COURT: I'm sorry. You're right. That was my fault.
Do you wish to make a closing argument now? And if you would like to, you can do it in the morning if you want to do that.
[DEFENSE COUNSEL]: I can-I just don't know. I've never been in a situation where you've already made a ruling. I'm not sure how to proceed since-
THE COURT: Okay. And I apologize for this. I am-you know, I have really been fixed on looking at the clock here because I have a commitment this evening. And so I will-you know, totally retract what I have just done. That was really my fault. And so, you know, if you would like to proceed with closing arguments tomorrow morning, we can do that at 9 o'clock.
[DEFENSE COUNSEL]: Okay. I think that would probably be in the best interests of Mr. McIntosh.
THE COURT: All right. Okay. We'll return then tomorrow morning. Thank you.
When the trial resumed the next morning, the court stated that it had "made a great misstep by announcing a verdict which I believe I set aside upon the objection of the defense counsel and for which I-again, I'm sorry for my complete mental glip." The court then asked defense counsel if she wanted to make any further record. Counsel declined to do so.
The parties then presented their closing arguments. Defense counsel argued that certain inconsistencies between TJ's trial testimony and her deposition proved that, although McIntosh had attempted the charged acts, he did not complete them. Defense counsel conceded that the State had proven that McIntosh committed first-degree child molestation as to both counts and asked the court to find McIntosh guilty of that lesser-included offense on Count I. Following the State's rebuttal argument, the court took a recess. Upon reconvening, the court announced:
In reviewing the State's Exhibit 15, the redacted copy of the statement made by [TJ] on March 29-actually, I think it was March 20th, it appears to me that in both cases this child victim describes licking in the hole. And I just for the record want to reference that. On page 9 of the CPC statement when she is describing the defendant's acts regarding her anus, at that point she said in response to the question she was asked, that it was like, in the hole. And I don't think there is any question about that in terms of the anus.
In addition, on page 10 of that same statement, the child again describes the action that was taken towards her and the defendant's licking her near and around her vagina. And again, she specifically answered again at the bottom *423 on page 10 of that CPC statement that it was in the hole.
The Court again having considered all of the evidence in this case finds that the defendant is guilty on Count I of Statutory Sodomy in the First Degree. And also finds the defendant guilty on Count II of Child Molestation, the Class B felony with which he is charged.
Defense counsel made no further record, and the discussion turned to the sentencing hearing.
At the sentencing hearing, the court heard arguments from counsel and then sentenced McIntosh to concurrent prison sentences of twenty years for first-degree statutory sodomy and fifteen years for first-degree child molestation. Defense counsel made no further request for relief regarding the court's initial denial of closing argument. This appeal followed.
Standard of Review
When a party objects, and the objection is sustained, but the party does not request relief beyond what is given, the trial court's failure to provide additional relief is reviewable, if at all, for plain error only. State v. Hartmann , 781 S.W.2d 251, 252 (Mo. App. 1989). McIntosh concedes that he failed to properly preserve this claim by not making further objection or requesting any additional relief after the court set aside its initial finding of guilt and heard closing arguments. He, therefore, requests plain error review of his claim.
Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' " State v. Brown, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009). All prejudicial error is not plain error; "plain errors are those which are evident, obvious, and clear." Id. In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. Id. at 607-08.
Discussion
McIntosh contends that the trial court plainly erred by not recusing or declaring a mistrial after it issued a judgment without first hearing closing arguments, and the error was not cured by withdrawing the judgment, hearing closing arguments, and then issuing the same judgment.
A criminal defendant "has an unfettered right under the Sixth Amendment ... to present a closing argument." State v. Crooks , 884 S.W.2d 90, 93 (Mo. App. 1994). It is well settled that a trial court may not deny a criminal defendant the opportunity to make closing arguments, regardless of whether the trial is heard by a jury or a judge.
*424 Herring v. New York, 422 U.S. 853, 858-60, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (invalidating a New York statute giving a trial court discretion to deny closing arguments in non-jury criminal trials).
The Herring Court explained the significance of a closing argument as follows:
The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.
Id. at 862. Any interference with defense counsel's function "in accord with the traditions of the adversary factfinding process" violates the Sixth Amendment. Id. at 857, 95 S.Ct. 2550. Absent waiver, the denial of the right to present a closing argument is plain error. Crooks, 884 S.W.2d at 94.
Here, however, the trial court did not deny defense counsel the right to present a closing argument. Rather, the court inadvertently announced a finding of guilt before counsel had the opportunity to make a closing argument. At issue is whether the court cured that error by setting aside the previously announced verdict, allowing counsel to make an argument, and then entering a new verdict.
McIntosh contends that it did not because the trial court's action constituted "structural error"-i.e. , error that is "so intrinsically harmful as to require automatic reversal ... without regard to [its] effect on the outcome" of the trial. See Neder v. United States , 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The Supreme Court has found structural error in only limited circumstances. See United States v. Ramirez-Castillo , 748 F.3d 205, 216 (4th Cir. 2014).[4] In United States v. Cronic , the Supreme Court included Herring in a list of cases standing for the proposition that the complete denial of counsel is a structural error. 466 U.S. 648, 659 n.25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In a more recent case, however, the Court appeared to cast doubt on that categorization, stating:
[E]ven assuming that Herring established that complete denial of summation amounts to structural error, it did not clearly establish that the restriction of summation also amounts to structural error.
Glebe v. Frost , --- U.S. ----, 135 S.Ct. 429, 431, 190 L.Ed.2d 317 (2014). In State v. Barton , 936 S.W.2d 781, 786 (Mo. banc 1996), where defense counsel in a capital case was not permitted to raise a particular theory in his closing argument, our Supreme Court reviewed that situation for *425 prejudice , rather than for structural error . Here, we need not engage in a "structural error" analysis, because this case presents neither a complete denial of summation, as in Herring , nor a restriction on summation, as in Barton . Rather, we need evaluate the trial court's actions only for prejudice, or in this case, plain error, i.e. , "manifest injustice." In so doing, we do not find that McIntosh's claim "facially establishes substantial grounds" for believing that he has been a victim of "manifest injustice." We, therefore, exercise our discretion to decline full plain error review.
A handful of cases have dealt with the scenario presented here. The outcomes of those cases have differed depending upon the court's response. Courts have declined to find reversible error where, as here, the trial court has indicated that it would consider the arguments and take them into account in rendering a final verdict. See, e.g., United States v. Westenfelder , 70 Fed. Appx. 302, 304 (6th Cir. 2003) (even though judge "revealed his tentative impressions about the evidence before closing argument, equating the judge's comments with an absolute refusal to hear or consider closing arguments is simply not justified"); United States v. Price , 795 F.2d 61, 64 (10th Cir. 1986) (noting that a defendant is not denied effective assistance of counsel when "permitted to make his closing argument to an attentive, open-minded trier of fact").
On the other hand, reversible error has been found where the trial court indicated that closing argument would not change its decision. See, e.g., Crooks , 884 S.W.2d at 93-95 (judge pronounced defendant guilty immediately after denying motion for acquittal and, when counsel asked "to argue the facts," judge stated, "You can't convince me that it wasn't a sexual touching," and "If I'm wrong on the law, you can convince me through the appellate court [.]"); United States v. King , 650 F.2d 534, 536-37 (4th Cir. 1981) (judge found defendant guilty immediately after the parties rested, defense counsel stated that he had not intended to waive closing argument, and the judge stated, "Go ahead if you want to argue it. I have already made my finding. It's not going to change anything[.]"). Both this Court and the Fourth Circuit treated the trial court's actions in those particular instances as tantamount to a complete denial of closing argument.
McIntosh heavily relies on a Maryland case, Spence v. State , 296 Md. 416, 463 A.2d 808, 811-12 (1983), which held that announcing a premature finding of guilt before hearing closing argument cannot be cured by withdrawing the verdict and then permitting closing argument.[5] There, however, as the dissent noted, the majority improperly assumed that a trial judge is incapable of fairly considering further argument. Id. at 818 (Murphy, C.J., dissenting). It also failed to distinguish an inadvertent denial of summation from an intentional denial and failed to credit the trial court for attempting to correct its error. Id.
We prefer the approach taken in Westenfelder and Price (i.e. , giving due consideration to all of the surrounding circumstances) to Spence's bright-line approach (which apparently mandates reversal). The circumstances of this case show that reversal is not warranted. Here, the trial court's statements and actions demonstrate that it was open to hearing and considering counsel's arguments. The court repeatedly noted that it had made a mistake in announcing *426 a decision before hearing argument and granted counsel an overnight recess to give counsel more time to prepare an argument. The court also took a recess after arguments were completed. When court reconvened, the judge discussed the evidence that she had considered, specifically, certain statements that TJ made during her interview at the Child Protection Center. In announcing its finding of guilt, the court stated that it had "again" considered all of the evidence in the case.
In Price , 795 F.2d at 64, the Court opined:
We accept the view that a trial judge, under these circumstances, is capable of keeping an open mind. There is neither an explicit statement nor an implicit suggestion that Mr. Price's closing argument did not receive open-minded consideration. The record demonstrates that the trial court acted inadvertently and did not manifest an unwillingness to hear Mr. Price's closing argument. We conclude, therefore, that defense counsel was permitted to make his closing argument to an attentive, open-minded trier of fact[, and] Price was not denied effective assistance of counsel.
The same is true here. There was "neither an explicit statement nor an implicit suggestion" that McIntosh's closing argument did not receive open-minded consideration. See id. Although the court had expressed an opinion about the evidence before closing argument, "equating [that] with an absolute refusal to hear or consider closing arguments" is not warranted. See Westenfelder , 70 Fed. Appx. at 304. Here, the trial judge acted inadvertently and did not exhibit an unwillingness to hear McIntosh's closing argument, as was the case in Crooks and King . Rather, McIntosh was permitted to make a closing argument to an attentive, open-minded trier of fact and was not denied effective assistance of counsel.
McIntosh also claims that the trial judge was obligated to recuse herself because her premature finding of guilt raised questions about her impartiality. As expressed by our Supreme Court in Anderson v. State , "[i]t is presumed that a judge acts with honesty and integrity and will not preside over a hearing in which the judge cannot be impartial." 402 S.W.3d 86, 92 (Mo. banc 2013). Moreover, "[i]n court-tried matters, trial courts ... are trusted to render a decision based only on proper evidence." Id. McIntosh quotes from Anderson's discussion of the standard for recusal,[6] but he ignores its definition of "a disqualifying bias or prejudice" as "one that has an extrajudicial source and results in an opinion ... on some basis other than what the judge learned from the judge's participation in a case ." Id. at 91 (emphasis added). Here, the trial judge did not render an opinion based on information from a source outside her participation in the case, nor did she consider "evidence properly in the case for an illegitimate purpose." See id. Rather, she went to great lengths to allow McIntosh a closing argument and to show that she received that argument with an open mind. The judge did not err in not recusing herself.
In sum, the trial court did not plainly err in not sua sponte declaring a mistrial or recusing after inadvertently making a *427 premature finding of guilt before closing arguments. The court cured its error by setting aside that finding and allowing counsel to make arguments to an attentive, open-minded finder of fact before rendering a final judgment. Point denied.
Based on the foregoing, we affirm the circuit court's judgment.
All concur.

Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2012 Cumulative Supplement.

See State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009).

We refer to the victim by her initials to protect her privacy. See § 595.226.1, RSMo 2016.

The Court in Ramirez-Castillo , 748 F.3d at 216 n.8, listed as examples: Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable-doubt instruction); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (violation of the right to a public trial); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (right to self-representation at trial); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (lack of an impartial trial judge). See also Williams v. Pennsylvania , --- U.S. ----, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016) (interested judge's failure to recuse from multi-member appellate panel); United States v. Gonzalez-Lopez , 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (denial of individual's right to counsel of choice).

While cases from other jurisdictions "can provide useful and insightful guidance," they "are not conclusive or binding precedent." State ex rel. Safety Roofing Sys., Inc. v. Crawford , 86 S.W.3d 488, 493 n.4 (Mo. App. 2002).

Under Rule 2-2.11(A): "A judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" This includes a situation where "[t]he judge has a personal bias or prejudice concerning a party ... or knowledge of facts that are in dispute...." Rule 2-2.11(A)(1). The rule requires recusal when "a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court." Anderson , 402 S.W.3d at 91.