WILLIAM W. FRANCIS, JR., P.J.
Mandy Lee Lemister ("Lemister") appeals her conviction, following a bench trial, of unlawful possession of a weapon. In two points on appeal, Lemister asserts the trial court erred in rejecting her "motion for judgment of acquittal" in that there was insufficient evidence to support her conviction, and that the trial court erred in "rendering a verdict" without first giving Lemister the opportunity for closing argument. Finding no merit to Lemister's points, we affirm the judgment of the trial court.
Factual and Procedural History
We recite the evidence in the light most favorable to Lemister's conviction. See State v. Lammers , 479 S.W.3d 624, 632 (Mo. banc 2016).
Lemister and her Husband were convicted felons. On January 20, 2016, Husband was driving a 1999 Chevy minivan, equipped with license plates registered to a Ford truck. A police officer pulled the van over for its improper license plates. Husband said he had a valid driver's license, which he was unable to produce. He then claimed not to have a driver's license, but instead "had a paper saying he could drive[.]" When asked, he was unable to produce that "paper" either. Police were able to determine at the scene that Husband's driver's license was actually suspended.
Husband consented to a search of the van. Lemister was in the passenger seat. Police immediately saw a rifle between them on the floor. An officer "leaned in the driver's door and looked down and s[aw] [a] rifle." It was "easily visible," "just laying on the open floor" between the two *611 front bucket seats. The rifle was "oriented along the length of the mini van" between the two front seats, "about the same distance between" Husband and Lemister. Next to the rifle and "plainly visible," was a half-dollar-sized container with methamphetamine residue. In the dashboard, "behind a wad of paper where the radio used to be" was a holstered (and loaded) pistol.
Police asked about the guns, and "within earshot" of Lemister, Husband several times "said the guns were in the car when he bought the car[.]"[2] "Lemister was handcuffed and [M]irandized[.]" Lemister "echoed [Husband's] statement, [and] said the guns were in the vehicle when we bought the vehicle." An offender-status check, ran through dispatch at the scene, confirmed that Husband and Lemister both had "prior felony criminal histor[ies]," and "could not possess firearms."
Lemister was charged by amended information, as a prior offender, with the class C felony of possession of a controlled substance (Count I), pursuant to section 195.202;[3] the class C felony of unlawful possession of a firearm (the rifle) (Count II), pursuant to section 571.070;[4] and with the class C felony of unlawful possession of a firearm (the pistol) (Count III), pursuant to section 571.070.
Lemister waived her right to a jury trial, and a bench trial commenced on March 6, 2017. After the State's case in chief, the State dismissed Count I with prejudice. Lemister filed a "Motion for Judgment of Acquittal at the Close of State's Evidence," and after hearing argument, the motion was denied.
Lemister testified in her own defense. She claimed Husband bought the van "a couple of days prior[ ]" to the incident, that she was not "with him when he bought it[,]" and buying the vehicle was not "something that [they] had discussed" and not "something that [she] participated in in any fashion[.]" She claimed her "first contact with that vehicle[ ]" was thirty minutes to an hour before they were pulled over. She claimed no knowledge of the guns until officers found them in the van during the traffic stop.
Lemister filed a "Motion for Judgment of Acquittal at the Close of all the Evidence," and defense counsel "rest[ed] on the previously made argument." The trial court overruled the motion.
The trial court then announced that it had found Lemister guilty of unlawful possession of the rifle (Count II), and not guilty on Count III, unlawful possession of the handgun.
Defense counsel stated, "Judge, frankly, I was going to ask to do closing argument as well." The trial court responded, "I'm sorry. I apologize. I will listen to closing argument." The trial court then invited the State to proceed with closing argument, which it did.
The following colloquy then occurred:
THE COURT: You may be heard, [defense counsel].
[DEFENSE COUNSEL]: Judge-
THE COURT: And really, counsel, what I'm looking for is how she could possibly avoid seeing a rifle that big in a car she's riding in.
[DEFENSE COUNSEL]: Sure.
Defense counsel then proceeded with closing argument, during which the trial *612 court interjected specific questions. The State declined rebuttal argument. The trial judge then announced:
THE COURT: I'm sorry, [defense counsel], you have not changed my mind. I believe the term that's used is easy reach and control, it's right there, she just had to reach down her hand, and that's all that is required and I do not believe her testimony that she did not have knowledge of the rifle. With regard to the pistol, absolutely, that's a great argument and I find the defendant not guilty of Count III. She is found guilty beyond a reasonable doubt of Count II.
The trial court sentenced Lemister to seven years' imprisonment on Count II, with suspended execution of sentence, and ordered five years' supervised probation with conditions. This appeal followed.
In two points, Lemister asserts the trial court: (1) erred in overruling her "motion for judgment of acquittal" because the evidence was insufficient to show that she had actual or constructive possession of the rifle; and (2) erred in "rendering its verdict" without first giving Lemister an opportunity to argue her case in closing argument.
Principles of Review
"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." Lammers , 479 S.W.3d at 632. We view the evidence and inferences in the light most favorable to the conviction, and ignore contrary evidence and inferences. Id. The "standard is the same in a bench-tried criminal case as in a jury-tried case." State v. Cole , 384 S.W.3d 318, 320 (Mo. App. S.D. 2012).
Analysis
Point I: Sufficiency of the Evidence
Lemister argues that the evidence was insufficient to demonstrate her "actual or constructive possession of the rifle[,]" such as would be required for her conviction of unlawful possession of a firearm.
Section 571.070.1 states:
A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:
(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony; or ...
Lemister did not contest her status as a felon. The remaining element is "possession," which means
having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint[.]
Section 556.061(22), RSMo Cum.Supp. 2013.
In the light most favorable to the State, the evidence adduced at trial was that Lemister was the passenger in a van driven by her husband. A rifle was "easily visible" between the two front bucket *613 seats. There was "no center console, just open on the floor, [the rifle] was laying open on the floor." It was "oriented along the length of the mini van" between the two front seats, "about the same distance between" Husband and Lemister. When an officer "leaned in the driver's door and looked down," he immediately saw the rifle. Lemister told authorities, apparently intending to exculpate herself that "the guns were in the vehicle when we bought the vehicle." Her testimony at trial was that they had purchased the vehicle "a couple of days prior."[5] Even if true (i.e. , for our purposes, if the trial court credited it), that evidence furthers the reasonable inference that Lemister knew about the rifle and its close proximity in the van. Given the credited evidence, and its reasonable available inferences, this was sufficient evidence that Lemister knew about the rifle, and was in actual or constructive possession thereof. See State v. Ludemann , 386 S.W.3d 882, 885-86 (Mo. App. S.D. 2012). Point I is denied.
Point II: Closing Argument
Lemister argues that the trial court "erred or plainly erred[6 ] in rendering a verdict without warning and before giving Lemister an opportunity to argue her case during closing argument[.]" Lemister's brief suggests "no case in Missouri has yet to consider the exact issue raised in the case at bar," and relies on decisions from other states and federal courts. The State's brief directs us to State v. McIntosh , 540 S.W.3d 418 (Mo. App. W.D. 2018), wherein the Western District discussed an analogous situation:
The circumstances of this case show that reversal is not warranted. Here, the trial court's statements and actions demonstrate that it was open to hearing and considering counsel's arguments . The court repeatedly noted that it had made a mistake in announcing a decision before hearing argument and granted counsel an overnight recess to give counsel more time to prepare an argument. The court also took a recess after arguments were completed. When court reconvened, the judge discussed the evidence that she had considered, specifically, certain statements that TJ made during her interview at the Child Protection Center. In announcing its finding of guilt, the court stated that it had "again" considered all of the evidence in the case.
In [U.S. v. ] Price , 795 F.2d [61,] 64 [ (10th Cir. 1986) ], the Court opined:
We accept the view that a trial judge, under these circumstances, is capable of keeping an open mind. There is neither an explicit statement nor an implicit suggestion that Mr. Price's closing argument did not receive open-minded consideration. The record demonstrates that the trial court acted inadvertently and did not manifest an unwillingness to hear Mr. Price's closing argument. We conclude, therefore, that defense counsel was permitted to make his closing argument to an attentive, open-minded trier of fact, and Price was not denied effective assistance of counsel.
The same is true here. There was neither an explicit statement nor an implicit suggestion that McIntosh's closing argument *614 did not receive open-minded consideration. Although the court had expressed an opinion about the evidence before closing argument, equating that with an absolute refusal to hear or consider closing arguments is not warranted.
McIntosh , 540 S.W.3d at 425-26 (internal quotations and citations omitted) (emphasis added).
Based on the record before us, McIntosh is controlling. The record demonstrates that the trial court's premature ruling was inadvertent, and that the trial court was "open to hearing and considering counsel's arguments." McIntosh , 540 S.W.3d at 425. The trial court here apologized for its inadvertent ruling, said it would listen to closing arguments, and even prompted defense counsel on the most advantageous route for argument: "And really, counsel, what I'm looking for is how she could possibly avoid seeing a rifle that big in a car she's riding in." Defense counsel made significant arguments in this vein, and the trial court injected specific questions during counsel's arguments. The State declined rebuttal argument.
The trial court then made the following statement:
I'm sorry, [defense counsel], you have not changed my mind. I believe the term that's used is easy reach and control, it's right there, she just had to reach her hand, and that's all that is required and I do not believe her testimony that she did not have knowledge of the rifle. With regard to the pistol, absolutely, that's a great argument and I find the defendant not guilty of Count III. She is found guilty beyond a reasonable doubt of Count II.
"There was neither an explicit statement nor an implicit suggestion that [defense counsel]'s closing argument did not receive open-minded consideration." McIntosh , 540 S.W.3d at 426 (internal quotation and citation omitted). Point II is denied. The judgment of the trial court is affirmed.
JEFFREY W. BATES, J. - CONCURS
DANIEL E. SCOTT, J. - CONCURS

Neither Husband's nor Lemister's name appeared on the car title.

All references to statutes are to RSMo 2000, unless otherwise indicated.

All references to section 571.070 are to RSMo Cum.Supp. 2010.

There was other evidence relevant to these inferences that, if believed, could have warranted different conclusions. But, the trial court did not believe that additional evidence, and our standard of review compels us to disregard it. See State v. Twitty , 506 S.W.3d 345, 348 (Mo. banc 2017).

Lemister's argument would fail regardless of which standard of review is applied.